IN THE

# SUPREME COURT

OF THE

## STATE OF IDAHO.

---

(January 25, 1906.)

ALMA D. KATZ, Appellant, v. C. E. HERRICK, Respondent.

[86 Pac. 873.]

FOREIGN CORPORATIONS—COMPLIANCE WITH LAWS PRECEDENT TO DOING BUSINESS — INSURANCE COMPANIES — CONSTITUTIONAL REQUIREMENT—POLICY OF THE STATE—CONTRACTS IN VIOLATION OF LAW CANNOT BE ENFORCED—TITLE TO LEGISLATIVE ACT—CURATIVE OR RETROSPECTIVE ACT—PURCHASER WITH NOTICE.

1. Under the provisions of section 10, article 11 of the constitution, and section 2653 of the Revised Statutes as amended by act of March 10, 1903, it is made unlawful for any foreign corporation to transact business in this state without having first filed a copy of its articles of incorporation with the Secretary of State and the county recorder of the county in which its principal place of business is established, and having also in like manner filed written appointment designating and authorizing an agent within the state to receive and accept service of process in any and all matters in which the corporation may be a party or concerned.

2. A foreign corporation failing to comply with the requirements of the constitution and of section 2653 of the Revised Statutes, as amended by act of March 10, 1903, cannot maintain a suit or action in any of the courts of this state for breach or violation of any contract entered into during the time the corporation had so failed and neglected to comply with the constitution and statute.

3. The people in adopting section 10, article 11 of the constitution have clearly announced the public policy of this state toward foreign corporations, and have proclaimed in unmistakable language that such artificial beings, existing only in contemplation of law, must subject themselves to the jurisdiction and laws of this state

before they can be accorded any recognition or legal existence within its jurisdiction.

4. Where the constitution or statute prohibits an act or declares that it shall be unlawful to perform it, it is the fair and reasonable interpretation and construction thereof to say that the people in the one case and the legislature in the other have intended to interpose their power and authority to prevent the act, and as one of the means of its prevention intended that the courts should not lend their power and authority in its enforcement.

5. As to whether or not the act of February 8, 1905, entitled "An act relating to foreign corporations doing business in the state of Idaho," is in violation and contravention of section 10, article 11 of the constitution, *quaere.*

6. Where the sole purpose and object of a legislative act is the validating and legalizing of the past transactions of a foreign corporation which has done business in this state without having first complied with the provisions of the constitution and statute in filing its articles of incorporation and designating an agent upon whom service of process may be had, and the title to such act is, "An act relating to foreign corporations doing business in the state of Idaho": *Held,* that the title does not express or indicate the subject matter of the act, and does not comply with section 16 of article 3 of the constitution, and that such act is for that reason unconstitutional and void.

7. Act of February 8, 1905, entitled "An act relating to foreign corporations doing business in the state of Idaho," is a retrospective and retroactive law, and is in that respect out of the usual and ordinary scope of legislation, and such act should have a title indicating in some manner the retroactive intent and operation of the statute.

8. Where K. was at all times mentioned the agent and manager of a foreign insurance company which was doing business in this state without having first complied with the requirements of section 10 of article 11 of the constitution, and section 2653 of the Revised Statutes, as amended by act of March 10, 1903, and a solicitor for such company took H.'s promissory note in payment of a premium on a policy of life insurance, and thereafter assigned such note to K., on which K. advanced him the amount of his commission, and the solicitor thereupon agreed to repay K. in case H., the maker of the note, failed to pay the same: *Held,* that K. was not an innocent purchaser of the note for value.

(Syllabus by the court.)

APPEAL from the District Court of the Third Judicial District, for Ada County. Hon. George H. Stewart, Judge.

Judgment for defendant. Plaintiff appealed. *Affirmed.*

Edwin Snow and Harry S. Kessler, for Appellant.

The company is not prohibited from doing business during noncompliance with the foreign corporation act of 1903. No penalty or punishment is prescribed for doing business. It is not made a crime, but the act itself clearly sets out what result is to follow. No contract or agreement made in the name of or for the use or benefit of such corporation prior to the making of such filings can be sued upon or be enforced in any court of this state by such corporation.

Notes taken by foreign insurance companies within this state are not void because they have not complied with the laws authorizing them to do business within its limits, but the remedy upon such notes is suspended until they do comply with said laws. (*American Ins. Co. v. Wellman,* 69 Ind. 413.) This is construing a law which expressly prohibits companies from doing business in the state without compliance and which fixes a criminal penalty for failure to do so.

Policy of insurance itself is valid, notwithstanding the company has not complied with the law. (*Berry v. Knight Templars etc. Indemnity Co.,* 46 Fed. 439; *Ehrman v. Teutonia Ins. Co.* (D. C.), 1 Fed. 471, 1 McCrary, 123; *Ganser v. Fireman's Fund Ins. Co.,* 34 Minn. 372, 25 N. W. 943; *Marshall v. Reading Ins. Co.,* 29 N. Y. Supp. 334, 78 Hun, 83.)

New Hampshire courts have held that if the policy is valid, the premium note is valid, even though the foreign corporation and its agents had laid itself open to criminal liability by writing policies before they had complied with the law. (*Union Ins. Co. v. Smart,* 60 N. H. 458; *Connecticut River Ins. Co. v. Way,* 62 N. H. 622; *Provincial Life Ins. Co. v. Lapsley,* 15 Gray (Mass.), 252.)

A contract is not void when the statute at the same time otherwise limits the effect or declares the consequences which shall attach to the making of the contract. (9 Cyc. 481,

*Philadelphia Loan Co. v. Tower,* 13 Conn. 249; *Rossman v. McFarland,* 9 Ohio St. 369.)

Davidson & Stoutemyer, for Respondent.

That this contract is absolutely void as to appellee we entertain no doubt. (*Cincinnati Mutual Health Assur. Co. v. Rosenthal,* 55 Ill. 85, 8 Am. Rep. 626.)

This construction of such statutes is supported by the overwhelming weight of authority. (3 Clark and Marshall on Private Corporations, par. 847b; *In re Comstock,* 3 Saw. 218, Fed. Cas. No. 3078; *Semple v. Bank of British Columbia,* 5 Saw. 88, Fed. Cas. No. 12,659; *Northwestern Mutual Life Ins. Co. v. Elliott,* 5 Fed. 225, 7 Saw. 17; *McCanna & Fraser Co. v. Citizens' Trust etc. Co.,* 74 Fed. 597; *Diamond Glue Co. v. United States Glue Co.,* 103 Fed. 838; *Farrior v. New England Mortgage Security Co.,* 88 Ala. 275, 8 South. 200; *Rising Sun Ins. Co. v. Slaughter,* 20 Ind. 520; *Union Central Life Ins. Co. v. Thomas,* 46 Ind. 44; *Cassady v. American Ins. Co.,* 72 Ind. 95; *Franklin Ins. Co. v. Louisville etc. Packet Co.,* 9 Bush (Ky.), 590; *Buxton v. Hamblen,* 32 Me. 448; *Williams v. Cheney,* 8 Gray (Mass.), 206; *National Mutual Fire Ins. Co. v. Pursell,* 10 Allen (Mass.), 231; *Reliance Mutual Ins. Co. v. Sawyer,* 160 Mass. 413, 36 N. E. 59; *Seamans v. Temple Co.,* 105 Mich. 400, 55 Am. St. Rep. 457, 63 N. W. 408, 28 L. R. A. 430; *Seamans v. Christian Bros. Mill Co.,* 66 Minn. 205, 68 N. W. 1065; *Williams v. Scullin,* 59 Mo. App. 30; *Barbor v. Boehm,* 21 Neb. 450, 32 N. W. 221; *Stewart v. Northampton Mutual Live Stock Ins. Co.,* 38 N. J. L. 436; *Pennington v. Townsend,* 7 Wend. (N. Y.) 276; *Bank of British Columbia v. Page,* 6 Or. 435; *Hacheny v. Leary,* 12 Or. 40, 7 Pac. 329; *Thorne v. Travelers' Ins. Co.,* 80 Pa. St. 15, 21 Am. Rep. 89; *Cary-Lombard Lumber Co. v. Thomas,* 92 Tenn, 587, 22 S. W. 743.)

The illegality of the transaction may be set up as against a holder of the note or bond who has not paid value, or who purchased with notice. (3 Clark and Marshall on Private Corporations, sec. 847h; *Jones v. Smith,* 3 Gray (Mass.), 500;

*Atlantic Mut. Fire Ins. Co. v. Fitzpatrick,* 2 Gray (Mass.),
279; *Roche v. Ladd,* 1 Allen (Mass.), 437; *Ehrhardt v. Robert-
son Bros.,* 78 Mo. App. 404; *Warren v. Stoddard,* 6 Idaho, 692,
59 Pac. 540.)

The validating act of 1905 is unconstitutional under section
16, article 3, of the constitution of the state of Idaho. The
title of this act is, "An act relating to foreign corporations
doing business in the state of Idaho." The legalization of
past transactions is not within the title of the statute which
states that it is to regulate the business of.building and loan
associations. (*Lindsay v. United States Sav. etc. Co.,* 120
Ala. 156, 24 South. 171, 42 L. R. A. 783. See, also, *Brieswick
v. Brunswick,* 51 Ga. 639, 21 Am. Rep. 240; *Lockport v. Gay-
lord,* 61 Ill. 276; *Snell v. Chicago,* 133 Ill. 413, 24 N. E. 532,
8 L. R. A. 858.)


W. E. Borah, James E. Babb, John P. Gray, C. L. Heit-
man and Stiles W. Burr, *amici curiae.*


The object of penalty provisions, especially those which
strike at the validity of the corporation's acts and contracts
and those which deny it access to the courts, is to compel com-
pliance by the corporation with the state's requirements, not
to punish the corporation nor to deprive it of its property or
property rights; such penalties are not enacted for the bene-
fit of persons who contract with such corporation, pocket the
consideration, and then seek to evade their obligation. For-
feitures are never favored, and this rule applies with special
force to statutes of this character. The greatest force of
these considerations is in cases dealing with the construction
and validity of legislative enactments affirmatively relieving
such corporations from the consequences of a default of this
sort. (*Caesar v. Capell,* 83 Fed. 403 (417, 426); *Wright v.
Lee,* 4 S. Dak. 237, 55 N. W. 931; *Carson-Rand Co. v. Stern,*
129 Mo. 381, 31 S. W. 772, 32 L. R. A. 420; *Chicago Mill etc.
Co. v. Sims,* 101 Mo. App. 569, 74 S. W. 128; Thompson on
Corporations, secs. 7955, 7956; *State v. American Book Co.,*
69 Kan. 1, 76 Pac. 411, 1 L. R. A., N. S., 1041; 19 Cyc.

1298; *Eastern Bldg. etc. Assn. v. Bedford,* 88 Fed. 7; *Washburn Mill Co. v. Bertlett,* 3 N. Dak. 138, 54 N. W. 544; *Blodgett v. Lanyon Zinc Co.,* 120 Fed. 893.)

Where the legislature has obeyed the mandate of the constitution by enacting statutes prescribing the manner in which the constitutional requirements shall be complied with, and providing explicit penalties for noncompliance, the statutory penalties will be held exclusive, and no additional penalty, invalidating the contract itself, will be implied from the constitutional prohibition. (*Fritts v. Palmer,* 132 U. S. 282, 33 L. ed. 317, 10 Sup. Ct. Rep. 93; *Wright v. Lee,* 2 S. Dak. 596, 51 N. W. 706, and 4 S. Dak. 237, 55 N. W. 931; *Kindel v. Lithographing Co.,* 19 Colo. 310, 35 Pac. 538, 24 L. R. A. 311; *La France Fire Eng. Co. v. Town of Mt. Vernon,* 9 Wash. 142, 43 Am. St. Rep. 827, 37 Pac. 287, 38 Pac. 80; *Caesar v. Capell,* 83 Fed. 403; *Jarvis-Conklin Mtg. Co. v. Willhoit,* 84 Fed. 514; *Pennypacker v. Capital Inv. Co.,* 80 Iowa, 56, 20 Am. St. Rep. 395, 45 N. W. 408, 8 L. R. A. 236; *Dearborn Foundry Co. v. Augustine,* 5 Wash. 67, 31 Pac. 327; *Louisville Property Co. v. Mayor,* 114 Tenn. 213, 84 S. W. 810; *Lumberman's Mut. Ins. Co. v. Kansas City etc. Ry. Co.,* 149 Mo. 165, 50 S. W. 281; *Buffalo Zinc Co. v. Crump,* 70 Ark. 525, 91 Am. St. Rep. 87, 69 S. W. 572; *Garrett Ford Co. v. Vermont Mfg. Co.,* 20 R. I. 187, 78 Am. St. Rep. 852, 37 Atl. 948, 38 L. R. A. 545.)

In the absence of an express declaration that the contract shall be void (which in the Idaho statute applies only to a conveyance of real estate), the result is merely to effect a suspension of remedy; and a subsequent compliance with the law by the corporation will validate the obligation and render it enforceable in law. (*Carson-Rand Co. v. Stern,* 129 Mo. 381, 31 S. W. 772, 32 L. R. A. 420; *Buffalo Zinc Co. v. Crump,* 70 Ark. 525, 91 Am. St. Rep. 87, 69 S. W. 572; *Phoenix Ins. Co. v. Pennsylvania Co.,* 134 Ind. 215, 33 N. E. 970, 20 L. R. A. 405; *Chicago Mill Co. v. Sims,* 101 Mo. App. 569, 74 S. W. 128; *Neuchatel Asphalt Co. v. New York,* 155 N. Y. 373, 49 N. E. 1043; *Huttig Bros. Mfg. Co. v. Denny Hotel Co.,*

6 Wash. 122, 32 Pac. 1073; *Blodgett v. Lanyon Zinc Co.,* 120 Fed. 93; *Eastern Bldg. Assn. v. Bedford,* 88 Fed. 7; *Wright v. Lee,* 4 S. Dak. 231, 55 N. W. 931; *Nat. Mut. Fire Ins. Co. v. Pursell,* 10 Allen, 231.)

There is absolutely nothing in the act which is not clearly comprehended in and covered by the title, or which is in the slightest degree foreign to or inconsistent with it.

Under the constitutional provision it is not necessary that the title should do more than indicate the general subject with which the act deals, which subject may be referred to in the broadest possible terms. (*Montclair v. Ramsdell,* 107 U. S. 147, 27 L. ed. 431, 2 Sup. Ct. Rep. 391; *Pioneer Irr. Dist. v. Bradbury,* 8 Idaho, 310, 101 Am. St. Rep. 20, 68 Pac. 295; *State v. Doherty,* 3 Idaho, 384, 29 Pac. 855; *State v. Jones,* 9 Idaho, 693, 75 Pac. 819; *Montgomery v. Robinson,* 69 Ala. 413; *People v. Lawrence,* 36 Barb. 177 (192); *Brewster v. City of Syracuse,* 19 N. Y. 116; *People v. Hazelwood,* 116 Ill. 319, 6 N. E. 480; *Seattle Waterway Co. v. Seattle Dock Co.,* 35 Wash. 503, 77 Pac. 845; *Deyoe v. Superior Court,* 140 Cal. 476, 98 Am. St. Rep. 73, 74 Pac. 28; *Abeel v. Clark,* 84 Cal. 226, 24 Pac. 383; *People v. Superior Court,* 100 Cal. 105, 34 Pac. 492; *Johnson v. Harrison,* 47 Minn. 575, 28 Am. St. Rep. 282, 50 N. W. 923; *People v. Parvin* (Cal.), 14 Pac. 783.)

The word *"subject,"* as used in the constitution, is not synonymous with *provisions.* (*Mexican Nat. R. Co. v. Jackson,* 118 Fed. 549, 55 C. C. A. 315; *Matter v. Mayer,* 50 N. Y. 504.)

The constitution of Indiana is identical with our own in this particular, so that the following cases are of special interest: *Bright v. McCullough,* 27 Ind. 223; *Clarke v. Darr,* 156 Ind. 692, 60 N. E. 688; *Kane v. Woods,* 78 Ind. 103. See, also, *Cardillo v. People,* 26 Colo. 355, 58 Pac. 678; *People v. Briggs,* 50 N. Y. 553; *Jonesboro v. Cairo etc. R. Co.,* 110 U. S. 192, 28 L. ed. 116, 4 Sup. Ct. Rep. 67; *People v. Lowenthal,* 93 Ill. 191; *Hellman v. Shoulters,* 114 Cal. 150, 45 Pac. 1057, 44 Pac. 915; *Sun Mut. Ins. Co. v. Mayor,* 8 N.

Y. 241; *State v. Frazier,* 36 Or. 178, 59 Pac. 5; *State v. Town of Union,* 33 N. J. L. 350; *People v. Gas Light Co.,* 205 Ill. 482, 98 Am. St. Rep. 244, 68 N. E. 950; *People v. Mullenden,* 132 Cal. 217, 64 Pac. 299; *Ex parte Liddell,* 93 Cal. 633, 29 Pac. 251; *People v. Banks,* 67 N. Y. 568; *Seymour v. City of Tacoma,* 6 Wash. 138, 32 Pac. 1077; *Lancey v. King Co.,* 15 Wash. 9, 45 Pac. 645, 34 L. R. A. 817; *In re Pinkney,* 47 Kan. 89, 27 Pac. 179; *State v. Hilderbrand,* 62 Neb. 134, 87 N. W. 25; *Powers v. McKinzie,* 90 Tenn. 167, 16 S. W. 559; *State v. Schlitz Brewing Co.,* 104 Tenn. 715, 78 Am. St. Rep. 941, 59 S. W. 1033; *Boyer v. Fire Eng. Co.,* 124 Mich. 455, 83 Am. St. Rep. 338, 83 N. W. 124; *Western Ranches v. Custer County,* 28 Mont. 278, 72 Pac. 659; *Burton v. Snyder,* 22 Colo. 173, 43 Pac. 1004; *Otoe Co. v. Baldwin,* 111 U. S. 1, 28 L. ed. 331, 4 Sup. Ct. Rep. 265; *Carter v. Sinton,* 120 U. S. 517, 30 L. ed. 701, 7 Sup. Ct. Rep. 650; *Hingle v. State,* 24 Ind. 28; *People v. Lovren,* 119 Cal. 88, 51 Pac. 22, 638; *Supervisors v. Railroad Co.,* 25 Ill. 181; *Mollie Gibson Min. Co. v. Sharp,* 23 Colo. 259, 47 Pac. 266; *State v. Campbell,* 50 Kan. 433, 32 Pac. 35; *In re Pratt,* 19 Colo. 138, 34 Pac. 680; *Golden Canal Co. v. Bright,* 8 Colo. 144, 6 Pac. 142; *Wishmier v. State,* 97 Ind. 161; *Maule Coal Co. v. Partenheimer,* 155 Ind. 100, 55 N. E. 751, 57 N. E. 710; *Commissioners v. Dwight,* 101 N. Y. 9, 3 N. E. 782; *Johnson v. Wood,* 19 Wash. 441, 53 Pac. 707; *In re Magnes' Estate,* 32 Colo. 527, 77 Pac. 853; *State v. County Court,* 128 Mo. 427, 30 S. W. 103, 31 S. W. 23; *State v. Power,* 63 Neb. 496, 88 N. W. 769; *Fleishman v. Walker,* 91 Ill. 318; *Paxton Irr. Co. v. Farmers' Irr. Co.,* 45 Neb. 884, 64 N. W. 343; *State v. Cantwell,* 179 Mo. 245, 78 S. W. 569; *State v. Wilson,* 80 Tenn. 246; *City of La Harpe v. Fuel etc. Co.,* 69 Kan. 97, 76 Pac. 448; *State v. Whittlesey,* 17 Wash. 447, 50 Pac. 119; *Johnson v. People,* 83 Ill. 431; *State v. Dickerman,* 16 Mont. 278, 40 Pac. 698; *State v. Anaconda Min. Co.,* 23 Mont. 498, 59 Pac. 855; *Marston v. Humes,* 3 Wash. 267, 28 Pac. 520; *Lien v. Board of Commrs.,* 80 Minn. 58, 82 N. W. 1094; *People v. Phippin,* 70 Mich. 6, 37 N. W. 888. As to the propriety of the use of

the term "foreign corporations" in the title of the act of 1905, see recent case of *Anglo-Californian Bank v. Field,* 146 Cal. 600, 80 Pac. 1080.

The title of an act containing curative provisions of retrospective effect need not definitely indicate the presence of such retrospective provisions and their retroactive intent and operation. (*Hope v. City of Gainsville,* 72 Ga. 246; *Bonner v. Milledgeville Ry. Co.,* 123 Ga. 115, 50 S. E. 973; *Mahomet v. Quackenbush,* 117 U. S. 508, 29 L. ed. 982, 6 Sup. Ct. Rep. 858; *Jonesboro v. Cairo etc. R. Co.,* 110 U. S. 1921, 28 L. ed. 116, 4 Sup. Ct. Rep. 67; *Unity v. Burrage,* 103 U. S. 447, 26 L. ed. 405 (the last three cases pass on the title of Illinois act) ; *Detroit v. Detroit Citizens' R. Co.,* 184 U. S. 368, 46 L. ed. 592, 22 Sup. Ct. Rep. 410; *Anderson v. Santa Ana,* 116 U. S. 358, 29 L. ed. 633, 6 Sup. Ct. Rep. 413; *Nottage v. City of Portland,* 35 Or. 539, 76 Am. St. Rep. 513, 58 Pac. 883; *City of Leavenworth v. Water Co.,* 69 Kan. 82, 76 Pac. 451; *Bosang v. Loan Assn.,* 96 Va. 119, 30 S. E. 440; *State v. Town of Union,* 33 N. J. L. 350; *Morris v. State,* 62 Tex. 728; *Iowa Sav. etc. Assn. v. Selby,* 111 Iowa, 402, 82 N. W. 968; *Hoboken v. Pennsylvania R. Co.,* 124 U. S. 656, 31 L. ed. 543, 8 Sup. Ct. Rep. 643; *Borough of New Brighton v. Bidwell,* 201 Pa. St. 96, 50 Atl. 989; *Donnelly v. City of Pittsburg,* 147 Pa. St. 348, 30 Am. St. Rep. 738, 23 Atl. 394; *State v. Starkey,* 49 Minn. 503, 52 N. W. 24; *State v. Gunn,* 92 Minn. 436, 100 N. W. 97; *Commissioners v. Dwight,* 101 N. Y. 9, 3 N. E. 782; *People v. Sutphin,* 166 N. Y. 163, 59 N. E. 770; *Hardenburg v. Von Keuren,* 4 Abb. N. C. (N. Y.) 43; *Rader v. Township of Union,* 39 N. J. L. 509; *Kennedy v. Belmar,* 61 N. J. L. 20, 38 Atl. 756; *Harrison v. Supervisors of Milwaukee Co.,* 51 Wis. 645, 8 N. W. 731; *Worthen v. Badgett,* 32 Ark. 496; *People v. Linda Vista Irr. Dist.,* 128 Cal. 477, 61 Pac. 86; *Mutual Benefit Life Ins. Co. v. Winne,* 20 Mont. 20, 49 Pac. 446; *Butler v. City of Lewiston,* 11 Idaho, 393, 83 Pac. 234.)

The language regarding retrospective legislation quoted by the Alabama court in *Lindsay v. United States Loan Assn.,*

120 Ala. 156, 24 South. 171, 42 L. R. A. 783, and by this court from that decision in its original opinion, applies to the construction of statutes themselves and not to the matter of their titles.

Another comment which might be made on the Lindsay case is that the Alabama constitution requires the subject of the act to be "clearly" expressed in the title. This word does not appear in the Idaho constitution.

W. B. Heyburn and John P. Gray, amici curiae, cite many of the authorities cited in the preceding brief on the question of sufficiency of title, and, in addition, Kleckner v. Turk, 45 Neb. 176, 63 N. W. 469; Mobile Trans. Co. v. Mobile, 128 Ala. 335, 86 Am. St. Rep. 643, 30 South. 645, 64 L. R. A. 333.

Unless a penalty is attached declaring that the agreement and deeds of the corporation shall be void, then only the state can take advantage of the failure of the corporation to comply with a constitutional or statutory provision requiring them to designate an agent upon whom process may be served. (Fritts v. Palmer, 132 U. S. 282, 33 L. ed. 317, 10 Sup. Ct. Rep. 93.)

This case went up from Colorado. The Colorado constitution, article 15, section 10, is word for word the same as section 10, article 11 of the Idaho constitution, and the supreme court of the United States, after carefully considering the question, held that the failure to comply with the constitutional provision did not render a deed to a foreign corporation void so that it could be collaterally attacked by a private person, but held that the state alone could pursue a corporation for failure to comply with the constitutional provision.

The courts have uniformly avoided the drastic consequences of acts such as the act of 1903, where it has been possible for them to do so. (Chattanooga etc. Co. v. Evans, 66 Fed. 815, 14 C. C. A. 116.)

M. A. Folsom and J. E. Blair, amici curiae.

The act of 1905, known as the curative act, was unconstitutional by reason of its conflict with section 16, article 3 of

the Idaho constitution. Its subject matter is not foreign corporations generally, but the contracts of foreign corporations with other parties, specifically. There is nothing in the title to indicate that the act was to cure the violations of the act of 1903.

In the following cases the general topic suggested by the title was held to be different in meaning from the specialized subject treated in the body of the act. (*McNeely v. Oil Co.,* 52 W. Va. 616, 44 S. E. 517, 62 L. R. A. 562; *Lewis v. Dunne,* 134 Cal. 291, 86 Am. St. Rep. 257, 66 Pac. 480, 55 L. R. A. 833; *Clark v. Commissioners,* 54 Kan. 634, 39 Pac. 226; *In re Snyder,* 108 Mich. 48, 65 N. W. 562; *Beverly v. Waln,* 57 N. J. L. 143, 30 Atl. 545; *Rader v. Union Township Committee,* 39 N. J. L. 515.)

The case of *Lindsay v. United States Sav. etc. Co.,* is squarely in point. The title was, "An act to regulate the business of building and loan associations." In our case the title is practically the same, "An act relating to foreign corporations doing business in this state." In both cases certain past transactions are attempted to be validated. And the Idaho statute is more radical than the Alabama statute.

The case of *Brieswick v. Brunswick,* 51 Ga. 639, 21 Am. Rep. 240, goes much further than is necessary for this court to go, for there, as in the Lindsay case, there were many other general and special provisions as to the incorporation of the town to which the special provision might have been argued to be properly related, and so comprehended under the title therein. Nor was this case "squarely overruled by the later decisions of the supreme court of Georgia, for the Hope case and the Bonner case are wholly dissimilar in their facts. *Snell. v. Chicago,* 133 Ill. 413, 24 N. E. 532, 8 L. R. A. 858, expressly follows *Lockport v. Gaylord,* 61 Ill. 276, showing that the Illinois court does not regard the other Illinois cases as affecting the decision of the Lockport case, or as contradictory to it. *Snell v. Chicago, supra,* is a later case than any of those cases decided by the supreme court of the United States from Illinois. In *Mahomet v. Quackenbush,* 117 U. S.

508, 29 L. ed. 982, 6 Sup. Ct. Rep. 858, *Jonesboro v. Cairo Ry. Co.*, 110 U. S. 192, 28 L. ed. 116, 4 Sup. Ct. Rep. 67, *Town of Unity v. Burrage*, 103 U. S. 447, 26 L. ed. 405, the supreme court was merely seeking to find the rule in Illinois, and, accordingly, expressed no independent opinion. On the other hand, these earlier cases have been questioned directly in Illinois courts. (*Middleport v. Ins. Co.*, 82 Ill. 562; *People v. Brislin*, 80 Ill. 423; *Welch v. Post*, 99 Ill. 474.)

The cases cited in brief of Messrs. Borah et al., from *Montclair v. Ramsdell*, 107 U. S. 147, 27 L. ed. 431, 2 Sup. Ct. Rep. 391, are cases of titles expressed in general terms followed by a general treatment. In such cases "the generality of the title is not fatal to the act." Here the title is expressed in general terms, not followed by a general treat- ment, but by a treatment so highly specialized that it con- stitutes something wholly different from the "subject" or "object' stated in the title.

James E. Babb, *amicus curiae*.

If the basis on which the controversy has proceeded, viz., that the statute is exclusively a retrospective one, had any foundation in fact, the question would be as to the sufficiency of a statute exclusively retrospective, enacted under a title general in terms. A determination of such a controversy is found in *State v. Jones*, 9 Idaho, 693, 75 Pac. 819.

In the case of *Hall v. Blackman*, 8 Idaho, 272, 68 Pac. 19, retrospective provisions of a statute enacted under a general title were declared effective.

The New Jersey and other authorities cited in the brief of Folsom & Blair, under the heading, "Cases of general title without general treatment," have been expressly disapproved, *Cardillo v. People*, 26 Colo. 335, 58 Pac. 678, and in practical effect by *Jackson v. Baehr*, 138 Cal. 266, 71 Pac. 167, and have been distinguished in late New Jersey cases. (*Kennedy v. Belmer*, 61 N. J. L. 20, 38 Atl. 756; *Jackson v. Asbury Park*, 60 N. J. L. 515, 64 Am. St. Rep. 600, 39 Atl. 693.)

STATEMENT OF FACTS.

This action was instituted by the appellant, Alma D. Katz, on a promissory note executed by the defendant, C. E. Herrick. The note was given in payment for the first annual premium on a policy of insurance issued by the Mutual Life Insurance Company of New York, in favor and on the life of the defendant. This note was made payable "to the order of himself . . . . at the office of the Mutual Life Insurance Company, Boise, Idaho," and was indorsed "C. E. Herrick." The defendant in his answer admitted the execution and delivery of the note to the agent of the Mutual Life Insurance Company, and that the same was made and delivered in payment of the first annual premium on a policy of insurance issued in his favor. The defendant pleaded as a bar to the right of recovery that the Mutual Life Insurance Company is a foreign corporation organized and existing under the laws of the state of New York, and doing business within the state of Idaho, and that it "has wholly failed, refused and neglected to comply with the provisions of an act of the seventh session of the legislature entitled, 'An act amending title 4, section 2653, of the Revised Statutes of Idaho, concerning corporations,' approved the 10th day of March, 1903; that said Mutual Life Insurance Company of New York has wholly failed, refused and neglected, within three months after the taking effect of said act, or at any time or at all, to file in the office of the recorder of Ada county, Idaho, or in the office of the recorder of any county in the state of Idaho, any designation of the county within the state of Idaho in which its principal business in the said state of Idaho shall be conducted." It also alleges the failure and refusal of the company to file a copy of its articles of incorporation with the Secretary of State as required by the provisions of the act. The defendant further alleges that the plaintiff was at all times mentioned in his complaint the agent and manager of the Mutual Life Insurance Company, within the state of Idaho, and in charge of its business in this state, and that he had notice of the consideration and purpose for which the

note was given, and that he was not a *bona fide* purchaser of the note for value. The case was submitted to the district court upon a stipulation of facts in which it was agreed that the note was given in payment of the annual premium on a policy of insurance issued by the Mutual Life Insurance Company. It was also agreed that the company had failed and neglected to comply with the act of March 10, 1903, within three months after the approval thereof, but that it "there-after complied with the provisions of the act after the commencement of this action." It was further admitted that "the plaintiff, if present, would testify that the Mutual Life Insurance Company of New York does not receive or take promissory notes in settlement of the premiums of its policies of insurance, and that its agents and solicitors are charged with the premium or premiums due on policies sold by them, and that whenever the said agents or solicitors accept or take promissory notes in payment of premiums on policies of insurance, they are taken and carried by the agent himself." It is further agreed that the plaintiff, if present, would testify that the Mutual Life Insurance Company has no interest in the note sued on, and that plaintiff received the same from the agent or solicitor of the company by advancing to such agent his commissions on the policy for which the note was given, and that the note was assigned to plaintiff with the understanding that plaintiff should have recourse on the agent in case the note was not paid.

AILSHIE, J. (After making the statement.)—The first question to be determined by us in this action is whether or not, under the constitution and laws of Idaho, a foreign corporation can maintain an action in the courts of this state for the breach of a contract entered into by such corporation within the state without first having complied with the constitution and statute in filing a copy of its articles of incorporation, and designating a statutory agent upon whom service of process can be made. Section 10 of article 11 of the constitution provides: "No foreign corporation shall do any business in this state without having one or more known

places of business, and an authorized agent or agents in the same, upon whom process may be served, and no company or corporation formed under the laws of any other country, state or territory, shall have or be allowed to exercise or enjoy within this state any greater rights or privileges than those possessed or enjoyed by corporations of the same or similar character created under the laws of this state.'' Section 2653 of the Revised Statutes as amended by act of March 10, 1903, is in part as follows: ''Every corporation not created under the laws of this state must, before doing business in this state, and every such corporation now doing business in this state must, within three months after the taking effect of this act, file with the county recorder of the county in this state, in which is designated its principal place of business in this state, a copy of the articles of incorporation of said corporation duly certified to by the Secretary of State of the state in which said corporation was organized, and a copy of such articles of incorporation duly certified by such county recorder, with the Secretary of State, paying to the latter the same fees as are provided by law to be paid for filing original articles of incorporation, and must within three months after the passage of this act, or from the time of commencement to do business in this state, designate some person in the county in which the principal place of business of such corporation in the state is conducted upon whom process issued by authority of or under any law of this state may be served, and within the time aforesaid must file such designation in the office of the Secretary of State, and in the office of the clerk of the district court for such county. . . . . No contract or agreement made in the name of, or for the use or benefit of, such corporation prior to the making of such filing as first herein provided can be sued upon or be enforced in any court of this state by such corporation.'' The foregoing section also provides that any conveyance of real estate to such foreign corporation prior to the filing of its articles of incorporation and designation of agent ''shall be absolutely null and void,'' and that all officers, agents and representatives of corporations which have failed to comply with the requirements of the

statute shall be jointly and severally personally liable upon all contracts and agreements made in violation of the statute. It further provides that any corporation failing to comply with the provisions of the act shall not be entitled to the benefit of the statute of limitations in any suit or action prosecuted against it.

It will be seen that in the very inception of our existence as a state, the framers of the constitution provided that no foreign corporation shall do any business in this state without having first authorized a lawful agent within the state upon whom process may be served, and also having established a known place of business. This provision of the constitution is self-acting, and self-operative, to the extent that it requires the facts therein enumerated to actually exist at the time such corporation begins to transact business within the state. The constitution, however, failed to require the corporation to furnish evidence of such facts and make the same a matter of record within any designated office or offices. The legislature, nevertheless, in the exercise of its undoubted power and authority, enacted section 2653, *supra*, and thereby pointed out the specific acts and things necessary to be done by any foreign corporation in compliance with the constitutional and statutory provisions, and in order to entitle it to do business within this state. The people, in adopting section 10 of article 11 of the constitution, clearly announced and proclaimed the policy of the state toward foreign corporations, and have said in unmistakable language that such artificial beings existing only by the will of a foreign state, must subject themselves to the jurisdiction and laws of this state before they can have any recognition or legal existence within its borders. Even in the absence of any constitutional declaration on the subject, the power of the legislature to impose conditions and restrictions upon foreign corporations before allowing them to do business in the state is clearly settled and firmly established.

In 1868 Mr. Justice Field, in the leading case of *Paul v. Virginia*, 8 Wall. 181, 19 L. ed. 357, laid down the doctrine as

follows: "The corporation, being the mere creature of local law, can have no legal existence beyond the limits of the sovereignty where created. As said by this court in *Bank of Augusta v. Earle* [13 Pet. 586, 10 L. ed. 306] : 'It must dwell in the place of its creation, and cannot migrate to another sovereignty.' The recognition of its existence even by other states, and the enforcement of its contracts made therein, depend purely upon the comity of these states—a comity which is never extended where the existence of the corporation or the exercise of its powers are prejudicial to their interests or repugnant to their policy. Having no absolute right of recognition in other states, but depending for such recognition and enforcement of its contracts upon their assent, it follows, as a matter of course, that such assent may be granted upon such terms and conditions as those states may think proper to impose. They may exclude the foreign corporation entirely; they may restrict its business to particular localities, or they may exact such security for the performance of its contracts with their citizens as in their judgment will best promote the public interest. The whole matter rests in their discretion."

It has been contended by appellant that since the statute points out certain penalties against a corporation and its agents and employees, in case it attempts to do business without complying with the statute, and since it also fails to specifically declare contracts entered into in violation of the statute to be void, that it was the intention of the legislature to only impose such restrictions and penalties, and not the intention to avoid such contracts. It will be seen that the constitution requires that a corporation shall have an authorized agent and a known place of business before transacting any business within the state. The statute says that "*before* doing business in this state" a foreign corporation *must* comply with the statute, etc. It also provides that no contract or agreement can be enforced by any corporation that has failed to comply with the statute. This language seems to us to clearly indicate both the intention of the

framers of the constitution and of the legislature to prohibit any transaction of business until the statute has been complied with. The purpose and spirit of these provisions indicate a clear intent to make such contracts unlawful. It would hardly be consonant with the duties of the courts and the office of the judicial department of the state to uphold and enforce contracts at the instance and on the application of corporations or individuals that have transacted business in the manner and under conditions which both the framers of the constitution and the legislative department of the state have said shall be unlawful. The courts are established for the purpose of upholding and enforcing the constitution and laws of the state, and when once they have arrived at the purpose and intent of the law-making department, it is their duty to enter such judgment and decrees as will render effective that intent. The corporations that have transacted business without observing the legal requirements, and also their assignees with notice, are therefore left without a remedy for the enforcement of such contracts.

In the consideration of statutory provisions similar to the one under discussion, it is said by the authors, at section 847-b of volume 3 of Clark and Marshall on Private Corporations, that "Most of the courts hold that the object of the statute is to prohibit foreign corporations, on grounds of public policy, from doing any business in the state until they have complied with all the conditions precedent prescribed by the statute; that this prohibition is absolute, and renders illegal contracts made by a foreign corporation in the state in violation of the statute; and that, since the contract is thus illegal, the corporation cannot maintain an action to enforce the same." The authors quote at some length and with approval from the opinion of Justice Walker in *Cincinnati Mutual Health Assur. Co. v. Rosenthal*, 55 Ill. 85, 8 Am. Rep. 626. This is one of the leading and most numerously cited cases on the subject, and, in considering the legislative intent in the passage of an act very similar to the one here under consideration, the Illinois court says: "When the legislature prohibits an

act, or declares that it shall be unlawful to perform it, every rule of interpretation must say that the legislature intended to interpose its power to prevent the act, and, as one of the means of its prevention, that the courts shall hold it void. This is as manifest as if the statute had declared that it should be void. To hold otherwise would be to give the person, or corporation, or individual the same rights in enforcing prohibited contracts as the good citizen who respects and conforms to the law. To permit such contracts to be enforced, if not offering a premium to violate a law, it certainly withdraws a large portion of the fear that deters men from defying the law. To do so places the person who violates the law on an equal footing with those who strictly observe its requirements. That this contract is absolutely void as to appellee, we entertain no doubt.'' This principle has been so repeatedly announced and affirmed by the courts as to make it impracticable, as well as unnecessary to review the authorities on the subject. We will therefore content ourselves with citing a few of the leading cases to the same effect as above: *Diamond Glue Co. v. United States Glue Co.,* 103 Fed. 838; *In re Comstock Lumber Co. v. Thomas,* 92 Tenn. 587, 22 S. W. 743; *Williams v. Scullin,* 59 Mo. App. 36; *Seamans v. Zimmerman,* 91 Iowa, 363, 59 N. W. 290; *Seamans v. Temple Co.,* 105 Mich. 400, 55 Am. St. Rep. 467, 63 N. W. 408, 48 L. R. A. 430; *Farrion v. New England Mort. Security Co.,* 88 Ala. 275, 7 South. 200, where constitutional requirement was considered; *Bank of British Columbia v. Page,* 6 Or. 431; *Thorn v. Travelers' Ins. Co.,* 80 Pa. St. 15, 21 Am. Rep. 89. On the other hand, the courts have very consistently and uniformly held that the corporation, when sued on one of these contracts, cannot interpose its failure to comply with the law as a defense, on the principle that one cannot be heard to excuse himself in a court of justice on account of his own violation of the law.

It is next urged by the appellant that if it be held that the corporation cannot maintain its action without first showing a compliance with the statute, that still he is entitled to recover

for the reason that the legislature, by an act approved February 8, 1905, entitled: "An act relating to foreign corporations doing business in the state of Idaho," has removed the disability and relieved them of the penalties imposed by the constitution and statute. This act provides in substance that every foreign corporation doing business in the state of Idaho at the time of the passage of this latter act which had failed or neglected to file its articles of incorporation and designation of statutory agent as provided by section 2653 of the Revised Statutes, as amended by act of March 10, 1903, and which had "complied, or in good faith attempted to comply, with the constitution and laws of this state" prior to the passage of the 1905 act, should be relieved from all the penalties, forfeitures and obligations previously imposed upon it by law, and that "all acts, transactions, contracts and agreements made or entered into by such corporation, and all deeds and conveyances to it or by it shall be as valid and effectual . . . . as if such corporation had duly complied with the said constitution and laws before the expiration of the time fixed and limited by section 2653." Respondent maintains that the act of February 8, 1905, is invalid and void, for the reason that it is in violation of section 10, article 11, and also section 16 of article 3 of the constitution. The reasons presented for holding this act in violation of section 10 of article 11 are, first, that it attempts to validate acts and contracts of foreign corporations that have done business in the state without having first appointed an authorized agent upon whom process might be served and established a known place of business; second, that it gives foreign corporations greater rights and privileges than those possessed or enjoyed by corporations of the same or similar character created under the laws of this state, in that it attempts to relieve them for a time after having commenced business from the burden of filing articles of incorporation, and freedom from the burden of appointing, designating and maintaining a statutory agent upon whom process can be served; and that it also attempts to relieve them for a time from the danger and liability of suits and actions

against them within this state for breach and violation of their contracts. It must certainly be conceded that the act is unconstitutional and necessarily void if it should be held that it attempts in any manner to relieve foreign corporations of any of the duties, obligations or liabilities imposed upon them by the constitution, or extends to them any privileges not enjoyed by similar domestic corporations. It would seem from the most casual reading of this act that it attempts to do those things. It is unnecessary, however, for us to further consider this contention, for the reason that the act is clearly in violation of section 16, article 3 of the constitution which provides: "Every act shall embrace but one subject, and matters properly connected therewith, which subject shall be expressed in the title." The sole and only purpose of the act was to relieve foreign corporations of the pains, penalties and forfeitures incurred by them in the transaction of business within this state in violation of both the constitution and statute. It was intended, as stated in the body of the act, to validate all conveyances of real estate to which they had been parties; to enable them to sue upon their contracts; to enable them to plead the statute of limitations; and to place them upon the same footing as they would have been had they complied with the organic law and the statutes of the state. The title, "An act relating to foreign corporations doing business in the state of Idaho," would never suggest to the most imaginative reader that it is the index to an act which has for its sole and only purpose the relief of foreign corporations, from the penalties and liabilities incurred by reason of their violating the law. The purpose of the title is to indicate to the lawmaker and the citizen as well the character and subject matter of the legislation proposed by the act. (*Turner v. Coffin*, 9 Idaho, 338, 74 Pac. 962; *State v. Jones*, 9 Idaho, 693, 75 Pac. 819.) The title under consideration would scarcely afford any suggestion or intimation of the enactment it conceals. Again, this act is outside of the ordinary and usual scope of legislation. It is a retrospective law; its object is to remove burdens and obligations already incurred, and this makes it the more necessary

and important that such an act have an appropriate title sufficient to give notice of its contents and bring it within the constitutional requirement.

The supreme court of Alabama, in *Lindsay v. United States Sav. etc. Co.*, 120 Ala. 126, 24 South. 171, 42 L. R. A. 783, recently had occasion to consider the sufficiency of the title to a legislative act which had for its purpose the legalization of past transactions, and the court there entered into a discussion of the subject at considerable length and with much reason. The court says: "The future, and not the past, is the ordinary usual field and scope of legislation. . . . . Prospective laws—laws looking to and operating in the future—are the rule; retrospective laws, looking backward, are exceptions. (Wade on Retroactive Laws, sec. 1.) Because the future, not the past, is the usual field and scope of operation, comes the general rule that, by construction, retroactive or retrospective operation will not be given a statute, unless its terms show clearly the legislative intention that it should have such operation. . . . . And there may be 'curative,' or, as they are sometimes termed 'healing,' statutes, the subject being expressed in general terms, and may satisfy the requirement of the constitution. But when it is proposed by an act like the present to deal with existing contracts and liabilities, there should be in the title some expression of that intention—some indication that such is the intent, or the purposes of the constitutional requirement are not satisfied." To the same effect is *Snell v. Chicago*, 133 Ill. 413, 24 N. E. 532, 8 L. R. A. 858; *Lockport v. Gaylord*, 61 Ill. 276; *Brieswick v. Mayor of Brunswick*, 51 Ga. 639, 21 Am. Rep. 240.

The next contention with which we are met is that since the act of March 18, 1901, establishing the office of insurance commissioner, and providing for the regulation and licensing of insurance companies, imposes substantially the same requirements and restrictions on insurance companies as section 2653, *supra*, enjoins on foreign corporations in general, it was unnecessary for an insurance company to comply with section 2653, and was not the intention of the legislature that it should do so. We do not think we are either required to consider, or

would be justified in passing on, this question in the condition the case comes before us. If the plaintiff intended in the lower court to excuse and justify the company's failure and neglect to comply with the act of March 10, 1903, on the grounds that it had complied with the act of March 18, 1901, it was plaintiff's duty, when the question was raised, to have made the showing that the company had in fact complied with the latter act, and thereby established the company's legal standing within this state, and its right to recognition and consideration by the courts of this jurisdiction. (*Cary-Lombard Lumber Co. v. Thomas,* 92 Tenn. 594, 22 S. W. 743.) Having failed to do so, and the record being entirely silent as to whether or not the Mutual Life Insurance Company has ever complied with the insurance laws of 1901, and it affirmatively appearing that it failed to comply with the act of March 10, 1903, this court is not placed in possession of sufficient evidence to justify it in considering as to whether or not a compliance with the insurance law alone would entitle such companies to transact business within this state.

Lastly, the appellant, Mr. Katz, is not an innocent purchaser for value. He was in charge and control of the Mutual Life Insurance Company's business in this state, and had notice of the consideration for which the note was executed, and is presumed to have known of the company's failure and neglect to comply with the law in filing a copy of its articles and designation of an agent on whom service of process might be had. Plaintiff occupies no more favorable position in the case than the insurance company would hold if suing on this contract. On this point Clark and Marshall on Private Corporations, volume 3, section 847h, say: "By the weight of authority, if a negotiable note or bond is given to a foreign corporation in a transaction which is illegal because of the corporation's failure to comply with the conditions precedent to the right to do business prescribed by statute, the illegality may be set up as against a holder of the note or bond who has not paid value, or who purchased with notice, but not as against a *bona fide* purchaser for value without notice."

It follows from what has been said that the judgment of the lower court must be affirmed, and it is so ordered. Costs awarded to respondent.

Stockslager, C. J., and Sullivan, J., concur.

ON REHEARING.

(September 6, 1906.)

AILSHIE, J.—This case was heard and decided at the November, 1905, term of this court, and a petition for rehearing was thereafter filed by counsel for appellant. A petition for rehearing was also filed by Messrs. W. E. Borah, James E. Babb and John P. Gray as *amici curiae,* after having secured permission so to do from a majority of the justices. After an examination of the petitions a rehearing was ordered. The cause was again argued and submitted at this present term of court. We have been furnished with briefs by the attorneys of the respective parties to the action, and in addition thereto we are favored with an elaborate and exhaustive brief, both by way of argument and citation of authorities, signed by Messrs. W. E. Borah, James E. Babb, John P. Gray and Stiles W. Burr, and also a brief by Messrs. W. B. Heyburn and John P. Gray, as *amici curiae,* urging a reversal of our former judgment, and insisting that the same is erroneous, and that we have misconstrued the provisions of our constitution and statute. We are also furnished with a brief by Messrs. M. A. Folsom and J. E. Blair, as *amici curiae,* reviewing the authorities, and presenting an argument in support of the original opinion as filed by the court. Counsel, in opposition to the views originally announced by the court, submit two principal and leading propositions: First, that section 10 of article 11 of the constitution is not mandatory and self-operative, and that it does not provide any penalty for its violation; second, that the act of February 8, 1905, entitled "An act relating to foreign corporations doing business in the state of Idaho," was properly

and sufficiently entitled and that the same is constitutional and valid.

Upon the first point urged there has been presented a great array of authorities. Our examination of the decisions and constitutions of various states discloses that a number of the states, notably western states, have constitutional provisions very similar to, and in many instances identical with, section 10, article 11 of the Idaho constitution. Upon the contention that this provision of the constitution is not self-operative and self-executing, the authorities are almost uniformly against the contention made. It is quite uniformly held that all negative or prohibitory clauses in mandatory or prohibitive form are of themselves self-operative as to the subject matter or thing to be prohibited or denied. (*Law v. People,* 87 Ill. 385; *Davis v. Burke,* 179 U. S. 399, 45 L. ed. 249, 21 Sup. Ct. Rep. 210. See 6 Am. & Eng. Ency. of Law, 2d. ed., 913; *Oakland Paving Co. v. Hilton,* 69 Cal. 483, 11 Pac. 3.)

As to the contention made by counsel that this constitutional provision carries with it no penalty and affords no defense to an action, and that it is only available to the state in an action of ouster against noncomplying foreign corporations, we are unable to agree with the argument advanced. It is true that many authorities, while not discussing the direct effect of such a constitutional provision, upon the whole support counsel's contention. It is noteworthy, however, that the authorities that attempt to deal with the general principle involved are in irreconcilable conflict both as to the reasons advanced for their holding and as to the conclusions reached therefrom. In the language of Justice Kellam in *Wright v. Lee,* 4 S. Dak. 237, 55 N. W. 933, "the conclusions of the courts are not only irreconcilable with each other, but no general controlling principle can be deduced from the judgments or the reasoning of the cases." Some courts have held that contracts made in violation of such constitutional or statutory provisions are wholly void; others have held them voidable only, while still others hold that such provisions have no effect upon, and no application to, contracts

made by noncomplying foreign corporations, and that the only effect of such provisions is to give the state the power to oust the disobedient corporation. The reasoning of the courts is neither conclusive nor assuring, especially when we consider their utter lack of harmony touching the reasons given for holding that such provisions amount to practically nothing in so far as the protection of the citizen is concerned. *Utley v. Clark-Gardner L. M. Co.*, 4 Colo. 372, is an example of the strange reasoning employed in some of these cases. There it was held that a constitutional provision identical with our own was a prohibition against doing business before complying with the terms of the law, but that to sue on such a contract was not *doing business*, and that therefore the constitution did not prohibit maintaining an action for recovery on the prohibited contract. This kind of reasoning is too delicately veiled and highly technical to appeal to us with much force. We take it that when the framers of the constitution said that ''no foreign corporation shall do any business in this state without having one or more known places of business and an authorized agent,'' etc., and the people adopted it into their organic law, that they meant exactly what the clear and unmistakable language employed implies. We cannot understand how such language can require construction or interpretation. It carries with it, on its face, its own construction and meaning. Neither can we agree with the contention made that such a provision is only meant for the protection of the state itself in its sovereignty. Now, it is clear to our minds that it was adopted for the protection of the citizen. A foreign corporation permitted to do business in this state does not obtain its franchise or legal existence from the laws of this state, but from the laws of the foreign state in which it was created. It obtains recognition and the right to do business here, not through and by reason of becoming incorporated under the laws of this state, but by reason of the performance of certain acts within this state in its corporate name and by its corporate authority. A failure to comply with these requirements and obtain the legal right to transact business is not in fact so much of an invasion

or violation of the sovereignty of the state as it is a violation of the private and property rights of the citizens with whom it does business. At the time of the adoption of the constitution, as well as now, it was the practice of many tramp, predatory and rapacious foreign corporations organized under the laws of —nobody knew where—to come into this jurisdiction and, without appointing an agent or establishing a place of business, make contracts and transact business, and after having violated their contracts or committed injuries and depredations upon the rights of the citizen, avoid the process of the state courts—which practically amounted, in many instances, to complete protection and immunity from the consequences of their unlawful acts. In the great majority of instances, if the citizen be unable to prosecute his action and secure redress for his grievances in the state courts and in the county where he resides, it amounts to denying him redress at all. In other words, to be dragged two or three hundred miles to prosecute his action in the federal court, amounts to denying him justice at all. These and other like reasons were undoubtedly the moving considerations for the framers of the constitution, and the people in its adoption, incorporating such a provision into that instrument. In view of these facts, for the courts to turn round and hold that no one but the state can invoke the provisions of that constitutional inhibition would be an utter perversion of justice and the plain intent of the people. A citizen has a right to presume that any foreign corporation that offers to enter into contracts and do business with him has complied with the law, and has a right to do business in the state, and has subjected itself to the state's jurisdiction, and we know of no principle either of law or justice that would put him under the necessity of examining the records of the Secretary of State and the county auditor of his county every time a foreign corporation offers to transact business with him. If he has a right to assume that such corporations have complied with the law, then he must undoubtedly and of necessity have the right to invoke the provisions of the constitution and statute against the recalcitrant and offending corporation that has not, in fact, sub-

jected itself to the jurisdiction of the state whenever it seeks to prosecute an action against him founded upon a right accruing during the time he would have been unable to procure service of process upon such corporation. And the fact that the corporation has kept its contract, although failed to comply with the law, so long as the transaction is not closed on both sides, does not alter the reason for the requirement, nor retroactively give the other contracting party means of serving process had he so desired or had the exigency arisen.

A great deal is said in the briefs of counsel, as well as in some of the authorities cited, about the evil the courts encourage in upholding a citizen of the state in dishonest transactions by allowing him to interpose this defense. That sounds very reasonable and is quite persuasive, but these authorities in this line of reasoning seem to lose sight of the honesty and morality—or, rather, lack thereof—involved on the other side of the question when corporations come into the state and decline to comply with its laws and subject themselves to the service of its process for the depredations and transgressions they commit while thus doing business in violation of its laws. We fail to see any greater evil in allowing a citizen to interpose as a defense the fact that a foreign corporation has failed to comply with the constitution and statute in appointing an agent and establishing a known place of business than there is in allowing such companies to come into the state and prey upon its citizens in total disregard of the law and say that such contracts are binding and enforceable. We have never held, and never intended so to do, that such contracts are entirely and absolutely void. On the contrary, we intimated in the original opinion that they are enforceable on the side of the party with whom they have assumed to contract. We did say, however, that the corporation should be without any remedy in the courts on an action to enforce contracts made by them while in default of compliance with the requirements of law. The evil does not exist so much in the contract as in the legal existence of one of the contracting parties. They are in some respects in the same position as a *de facto* domestic corporation that has failed or neglected

to become a *de jure* corporation. They come into the state, transact business in some capacity, but refuse to comply with the laws of the state that gives them a standing within its jurisdiction as corporations. They do business, therefore, without name, identity or legal existence.

Much is said as to the evil effects to flow from such holding, but we are satisfied from our examination of the question that the greater number of these evils are imaginary and chimerical rather than real. We hold the citizen liable criminally even though he did not know the law he has violated, and we know of no valid reason why a corporation should not be equally chargeable with knowledge of the law and its requirements. Courts of equity are always able to protect innocent and honest persons in legitimate transactions, and we are satisfied that the courts of this state can and will protect all persons who have had honest dealings with noncomplying foreign corporations where they deserve protection. The best way, however, to secure a compliance with and obedience to the laws is to begin at the fountainhead and enforce its obedience on all alike. These corporations can always get service on the citizen; but where they fail to comply with the law, he can seldom get service on them. Indeed, he can seldom find where they live, from whence they came or whither they have gone.

Counsel lay much stress on *Fritz v. Palmer,* 132 U. S. 282, 33 L. ed. 317, 10 Sup. Ct. Rep. 93. A careful perusal of that case discloses that it is not in point here. That was an action in ejectment to recover possession of certain real estate. Plaintiff's grantor had previously conveyed the property to a foreign corporation that had not complied with the laws of the state of Colorado prior to its commencement to do business in the state. The court said: "It may be assumed, therefore, that the Comstock Mining Company, being a corporation of another state, had no right to do business in the state of Colorado until after it had one or more known places of business within its limits, and an authorized agent designated upon whom process could be served, nor until it had made and filed in the proper office the certificate prescribed by

section 260 of the statute relating to foreign corporations. . . . . But it does not follow that the title to the property conveyed to the Comstock Mining Company remained in Groshon, notwithstanding his conveyance of it to that company, in due form, and for a valuable consideration.''

The Fritz-Palmer decision did not arise from an action to enforce a contract, but from a suit to cancel and avoid a contract; the holding that incompetency of the corporation to take and hold title to real estate could only be invoked by the state was a sound, equitable principle peculiarly applicable to that class of cases, but has no application here. There no right had been jeopardized, no risk had been incurred by the party pleading the noncompliance of the adversary; here the hazard and risk is admitted—hazard and risk of being unable to get service of process on the noncomplying corporation. The right to take and hold title to real property is one that can neither legally nor equitably concern the vendor thereof after he has parted with his title and received the purchase price therefor.

Counsel furnish an exhaustive argument and cite a great number of authorities in support of their position that the title to the act of February 8, 1905, is a sufficient compliance with section 16 of article 3 of the constitution. The citations are entirely too numerous for us to undertake to analyze them; besides, they are all on such different subjects of legislation and concern such a variety and diversity of topics of legislation, and the facts and circumstances under which they were enacted and considered by the courts so at variance with the case at bar, that a review and analysis of them would be of no special value in this opinion. A great many of the cases cited in support of the title to the act under consideration were cases where the legislature had amended municipal charters or charters of public or governmental institutions, wherein the various legislatures have ratified and confirmed some municipal or public act in which the rights of private individuals were not abridged or affected, and where the public only were interested and concerned. We do not conceive that that line of cases are authority in determining the suffi-

ciency of the title to an act like the one under consideration. It is argued in this case that the title of the act covers the subject of the legislation, and that it was sufficiently general and comprehensive to include the subject concerning which the act attempted to legislate. The main trouble with this title is that it is misleading, and does not furnish notice as to the subject matter about which it attempts to legislate. There is a vast difference between a general and comprehensive title that covers a general subject about which it is attempted to legislate, and which will, of course, embrace all incidental and ancillary matter proper or necessary to perfect the legislation and make it operative in all its parts, and a title referring to a general subject where the legislation does not touch that subject, but is merely and solely an incident of the subject. In this case the title gives notice that the legislation proposed concerns "foreign corporations doing business in the state of Idaho," but when we come to examine the actual legislation, we find that it has no reference to business that foreign corporations are either doing *in praesenti* or intending to do *in futuro,* nor does it even affect all foreign corporations. Its sole business is to cure and validate business transactions already consummated of that class of foreign corporations that have previously disregarded the constitution and the statutes of the state. Its object is to remove a disability from a class of foreign corporations that have transacted business under conditions and a state of facts that the constitution and statutes say they should not. We might say with equal propriety here, as we said in *Turner v. Coffin,* 9 Idaho, 338, 74 Pac. 962, that: "The trouble with this act is that the title and the act do not fit each other. The title indicates one thing while the bill attempts to write an entirely different thing into the law." It is true that none of the authorities, so far as we know, have held that the title should consist of an *index* in the sense that it should enumerate item after item upon which it is intended to legislate; but it should be an index in the sense that it should point out in a general way the scope and object of the proposed legislation.

It has been asserted by counsel that *Lockport v. Gaylord,* cited in the original opinion, has been expressly repudiated by the supreme court of the United States in *Mohomet v. Quackenbush,* 117 U. S. 508, 29 L. ed. 982, 6 Sup. Ct. Rep. 858. Our examination of the latter authority fails to satisfy us that the United States supreme court has meant to disapprove the doctrine there announced. On the contrary, that case is referred to and cited as authority by the Illinois supreme court as late as 1890, in *Snell v. Chicago,* 133 Ill. 413, 24 N. E. 532, 8 L. R. A. 858. In the latter case the court says: "It must also be held, upon the authority of *Lockport v. Gaylord,* 61 Ill. 276, that section 3 of the act of March 1, 1854, is unconstitutional. The title of the last-named act is 'An act to incorporate the Northwestern Plank Road Company.' Section 3 thereof, after reciting that the corporators had theretofore organized, and proceeded to prosecute the construction of the road under the void act of February 12, 1849, attempts to legalize and make valid the acts done in pursuance of such void act. The legalization of unauthorized acts cannot be regarded as germane to the subject expressed in the title."

Counsel also assert that *Brieswick v. Brunswick,* cited by this court, was overruled in *Hope v. City of Gainesville,* 72 Ga. 246, and *Bonner v. Milledgeville Ry. Co.,* 123 Ga. 973, 50 S. E. 973. An examination of these latter authorities entirely fails to justify the assertion made as to their effect upon the former authority. The principal case in which the Georgia court held that its former decisions contained *obiter,* and in which it distinguished, was *Gardner v. Georgia R. & B. Co.,* 117 Ga. 534, 43 S. E. 863, but the point on which the court was distinguishing was an entirely different proposition from that involved here, and did not involve the Brieswick-Brunswick case. Indeed, the latter case is not mentioned or cited in the Gardner case.

The elaborate, exhaustive and able briefs with which we have been favored have seemed to demand more than ordinary consideration and examination of the authorities and questions touched, and we have accordingly devoted to them much

Points Decided.·

time and labor. We have contented ourselves, however, in this opinion with only a statement of some of the principal and controlling considerations which have led us to the conclusion at which we have arrived, without any attempt at the interminable task of analyzing, discussing or reviewing the enormous mass of authorities to which we have been directed and which we have examined with diligence.

We conclude that the judgment of the court as previously announced must stand as the unanimous conclusion and judgment of the court, and it is so ordered.

Stockslager, C. J., and Sullivan, J., concur.