(November 23, 1925.)

## BUTTE MACHINERY COMPANY, a Corporation, Appellant, v. R. N. JEPPESEN, Respondent.

[241 Pac. 36.]

BILLS AND NOTES—HOLDER IN DUE COURSE—NOTICE OF DEFENSES—APPEAL AND ERROR—REVIEW—VERDICT—SUFFICIENCY OF EVIDENCE TO SUPPORT.

1. Merely suspicious circumstances will not charge the purchaser of a promissory note with bad faith and notice of alleged defenses; there must be actual notice, either of the facts constituting the defenses or of such facts and circumstances that the purchase of the paper in the face of such knowledge amounts to bad faith.

2. Knowledge by a foreign corporation, purchaser in its home state of a promissory note from the payee, a mining corporation of the same state, that such promissory note was given in Idaho for shares of stock of the payee of what might be conceded to be a speculative character, and the further knowledge that at the time of purchase payee was unable to pay in cash all of its operating expenses and therefore transferred such note, charges the purchaser neither with notice that such stock was sold in violation of C. S., chap. 187, prescribing conditions precedent to the right of foreign corporations to do business in this state and in violation of C. S., chap. 206, known as the Blue Sky Law, nor with the duty of inquiry into the transaction out of which the note originated.

3. *Held*, that the evidence is insufficient to support the verdict and the judgment based thereon.

APPEAL from the District Court of the Ninth Judicial District, for Madison County. Hon. Geo. W. Edgington, Judge.

Action upon promissory note. Judgment for defendant. *Reversed and remanded.*

Publisher's Note.

1. Who is *bona fide* holder of negotiable instrument, see notes in 3 Am. Dec. 235; 9 Am. Dec. 272; 44 Am. Dec. 698.

Miller & Ricks, for Appellant.

A holder in due course of a note executed to a corporation not entitled to do business in the state may enforce it under the provisions of the Negotiable Instrument Act. The maker admits the existence of the payee and its capacity to indorse and that a holder in due course holds free from any defenses available to prior parties among themselves. (*First Nat. Bank of Central City v. Utterback,* 177 Ky. 76, 197 S. W. 534; *Kraft v. Hoppe,* 152 Minn. 143, 188 N. W. 162; *Farmers & Merchants' State Bank v. Graif,* 150 Minn. 315, 185 N. W. 374; L. R. A. 1918B, 840, note.)

The fact that a note has been executed to a foreign corporation doing business in the state without having complied with the requirements to there transact business is no defense to an action on the note by a *bona fide* holder thereof with no knowledge of the failure to comply with the statute. (*Citizens' Nat. Bank v. Bucheit,* 14 Ala. App. 511, 71 So. 82; *Jones v. Martin,* 15 Ala. App. 675, 74 So. 761; *McMann v. Walker,* 31 Colo. 261, 72 Pac. 1055; *Zinc v. Dick,* 1 Ind. App. 269, 27 N. E. 622; *Finseth v. Scherer,* 138 Minn. 355, 165 N. W. 124; *Hart v. Livermore Foundry & Match Co.,* 72 Miss. 809, 17 So. 769; *State Bank v. Holloland,* 103 Tex. 266, 126 S. W. 564; *Carrolton Pressed Brick Co. v. Davis* (Tex. Civ. App.), 155 S. W. 1046, L. R. A. 1918B, 840, note 1; 9 Fletcher, Cyc. Corp., 10,092, note 39; *Katz v. Herrick,* 12 Ida. 1, 86 Pac. 873.)

C. W. Poole, for Respondent.

Whether a holder of an instrument, who claims to have taken it before maturity for value, acted in good or bad faith in so taking it may be determined from the circumstances relating to the conduct of the parties at the time, and is a question for the jury. (8 C. J. 501, 502, 505; Daniels on Negotiable Instruments, 6th ed., sec. 795b; *Winter v. Nobs,* 19 Ida. 18, Ann. Cas. 1912C, 302, 112 Pac. 525; *Park v. Johnson,* 20 Ida. 548, 119 Pac. 52; *Vaughn v.*

*Johnson,* 20 Ida. 669, 119 Pac. 879, 37 L. R. A., N. S., 816; *Mee v. Carlson,* 22 S. D. 365, 117 N. W. 1033, 29 L. R. A., N. S., 351; *Arnett v. Sanderson,* 25 Ariz. 433, 218 Pac. 986; *Everding & Farrell v. Toft,* 82 Or. 1, 160 Pac. 1160.)

A note made to a corporation for shares of its capital stock offered for sale, and sold by the corporation, or its agents or officers in the state of Idaho, before the corporation has complied with the "Blue Sky Law," is void in the hands of the corporation, and the consideration for such note is illegal.  (C. S., chap. 206; *Hall v. Geiger-Jones Co.,* 242 U. S. 539, 37 Sup. Ct. 217, 61 L. ed. 480; *Ex parte Taylor,* 68 Fla. 61, Ann. Cas. 1916A, 701, 66 So. 292; *Domenigoni v. Imperial Live Stock & Mtg. Co.,* 189 Cal. 467, 209 Pac. 36; *Stewart v. Brady,* 300 Ill. 425, 133 N. E. 310; *Creasy Corporation v. Enz Bros. Co.,* 177 Wis. 49, 187 N. W. 666; *Edward v. Ioor,* 205 Mich. 617, 172 N. W. 620; *Mannizi v. Caprile,* 43 Cal. App. 498, 185 Pac. 673; *Cashin v. Pliter,* 168 Mich. 386, Ann. Cas. 1913C, 697, 134 N. W. 482.)

BUDGE, J.—Appellant Butte Machinery Company, a Montana corporation, brought this action against respondent Jeppesen to recover upon a promissory note given by the latter to the order of the Hesperus Mining Company, a Montana corporation, in the principal sum of $1,000, dated at Idaho Falls, Idaho, September 22, 1921, and payable one year after date, with interest.  The case was tried to the court and jury, resulting in a judgment in favor of the respondent, from which judgment this appeal is prosecuted.

Appellant claims that it took this promissory note at Butte, Montana, from the mining company in good faith, before maturity, in payment of a debt then due for the rental of certain mining machinery.

Respondent admitted the execution and delivery of the note to the payee, but denied that appellant purchased the same before maturity, for a valuable consideration and without notice of any defenses available to him against the note in the hands of the mining company.  He alleged that the

note was given in this state for the purchase price of shares of its capital stock sold to him by the mining company, which was then doing business and selling its stock in this state without having complied with the provisions of either C. S., chap. 187, or chap. 206; that appellant likewise failed to comply with the provisions of C. S., chap. 187; that the execution and delivery of the note was procured by fraudulent misrepresentations as to the value of the stock and as to when the note would be used by the mining company.

The question of fraud in the procurement of the note was eliminated in the trial of the cause, the court having found that respondent did not produce sufficient evidence to warrant that defense being submitted to the jury. There being no cross-appeal by the respondent, the correctness of the trial court's ruling in that regard is not here for determination. The note was transferred by the mining company to appellant at Butte, Montana, thus eliminating noncompliance by appellant with C. S., chap. 187, as any matter of defense.

From the record it must be conceded that the mining company, payee of the note, failed to comply with the provisions of C. S., chap. 187, prescribing conditions precedent to the right of a foreign corporation to do business in this state, or with the provisions of C. S., chap. 206, known as the Blue Sky Law, regulating the sale of corporate stock. But the defense that the note in question was given by respondent for shares of stock in a corporation that had not complied with the provisions of the statute is ineffectual against the appellant if it is a holder in due course. (*Ashley & Rumelin v. Brady, ante,* p. 160, 238 Pac. 314; *Katz v. Herrick,* 12 Ida. 1, 86 Pac. 873.)

We come now to the serious question presented upon this appeal by appellant's assignment of error No. 18, which is that the evidence is wholly insufficient to justify a verdict for the respondent, in that there is no proof that appellant had knowledge that the note was given to the payee in payment for shares of stock in a foreign corporation that had

not complied with the laws applicable to such corporations wishing to do business in this state, or with our Blue Sky Law.

The evidence, part of which is stressed by respondent as establishing knowledge on the part of appellant and its officers of the failure of the mining company to comply with the statutes above referred to, may be briefly summed up in the following statement: A corporation known as the Butte and New England Copper Mining Co. had previously to the transaction now in question operated on certain mining property in the city of Butte. This company went into bankruptcy, and its interest in the property was sold to the Davis-Daly Mining Co. Some time thereafter the Hesperus Mining Company began operations on this same property under an assigned lease from the Davis-Daly Mining Co. At the time of the transactions under which appellant claims title to the promissory note one O'Flynn, residing at Butte, was the secretary of the mining company, one Roberts of Shelly, Idaho, its president, and one Lee of Idaho Falls, Idaho, a director or at least its legal adviser. Herman, the secretary-treasurer of appellant corporation, and Roberts and O'Flynn entered into an agreement on behalf of their respective companies for the leasing to the mining company of certain mining machinery at the rental of $2,000 for six months. When $1,000 became payable to appellant under the rental arrangement, O'Flynn represented to Herman that the mining company would be hampered in its operations if appellant demanded payment in cash, so between them they discussed the proposition of the mining company turning over in payment of this rental the note sued upon and other notes signed by Idaho people. Before accepting the respondent's note as such payment, Herman wrote to a firm of attorneys at Idaho Falls inquiring as to respondent's financial condition, and was advised that if the note became due in the very near future respondent would not be able to pay it, but that he was a farmer owning considerable good farming land, and might

be able to pay after harvest. Upon this information the note was taken by appellant. Herman testified at the trial that he was the only officer acting for appellant in the lease of the machinery and the taking of the note, that he did not know what the note was given for, that he knew that Roberts was president of the mining company and a resident of Idaho but that he did not know any other officers excepting O'Flynn and one McNulty, whose connection with the company had ended prior to the leasing of the machinery. He further stated that at the time of the lease the mining company was operating the mine and taking out ore, and had upon the premises mining supplies such as timber, powder, coal and steel, and the lighter equipment such as mine cars, rails, etc.

Respondent contends that from these circumstances "appellant must be charged with notice or knowledge that the Hesperus Mining Company was only another 'wild cat or fly-by-night' concern, promoted to sell stock" and "with notice that the note was made for stock, as the Hesperus Mining Company had no other resources." He further argues that "appellant took the view that the Hesperus Mining Company was in failing circumstances, which it was at the time, and that the notes, the one in suit and others of like character transferred to appellant, were better than nothing"; and that this was "appellant's reason for not inquiring of Mr. O'Flynn as to how the Hesperus Mining Company came to have these Idaho notes, as inquiry would have revealed the illegality, and made them valueless in the hands of the Butte Machinery Company." He claims that "it would be a reflection upon his (Herman's) intelligence to charge that he did not have a well fixed opinion at the time his company accepted these notes in payment of the obligation of the Hesperus Mining Company that the notes were made for stock that had been sold to residents of Idaho."

There is no direct testimony in the record that appellant knew that the note was given for stock, or that it knew that

the mining company had attempted to transact business of any kind in this state, in compliance with statutes or otherwise. We think the foregoing quotations from respondent's brief, considered in connection with the course pursued by his counsel in the cross-examination of Herman as a witness for appellant, reflects respondent's opinion that it ought to be inferred from the evidence that appellant knew that the note was given for stock, but not that it knew that the stock was unlawfully sold in Idaho, or that the mining company had transacted business in this state without complying with the statute. The question, therefore, is whether or not the circumstances proved were sufficient as a matter of law to charge appellant with the duty of inquiring into the transaction by which the payee obtained the note, to the extent of uncovering any defenses, under the penalty of having bad faith imputed to it for not making such inquiry. Our consideration of that question will follow the respondent's contentions in their order.

Did the appellant know that the mining company was a wildcat concern? The appellant leased the machinery to the mining company in the ordinary course of business, and considered that company's lease and equipment sufficient to entitle it to some credit without any deposit of stock subscription notes in the way of collateral. The company was then taking out ore and doing underground work. The reason for its failure to make a success of the venture is altogether a matter of speculation; there is some evidence to the effect that it was insufficiently capitalized. In other words, the record does not show that there was no essential merit in the proposition, or that the mining company's show of activity was, or should have been known to be, merely a stock-selling scheme. Even if appellant regarded the enterprise as highly speculative, it would still not be charged with bad faith in acquiring the respondent's note. (*First Nat. Bank v. Gunning*, 127 Wash. 307, 220 Pac. 793.)

If we concede that the evidence sufficiently makes it appear that the mining company was in failing circumstances

at the time appellant took the note, that fact does not place upon appellant the duty of inquiry. In *First Nat. Bank v. Stover,* 21 N. M. 453, Ann. Cas. 1918B, 145, 155 Pac. 905, L. R. A. 1916D, 1280, the court refused to hold that knowledge that the payee of the note was in financial difficulties inferred bad faith or placed any legal duty upon the indorsee to inquire into the transaction by which the note was procured. In *Forbes v. First Nat. Bank,* 21 Okl. 206, 95 Pac. 785, it was said that mere knowledge that the payee was in failing circumstances, without knowledge going directly to an infirmity in the title to the instrument, does not establish bad faith. This ruling was later approved in *McPherrin v. Tittle,* 36 Okl. 510, 129 Pac. 721, 44 L. R. A., N. S., 395.

Granting that appellant took the note with knowledge that it was given for corporate stock, we are still unable to concede that appellant was under any duty to investigate the origin of the note. In *Bank of Hale v. Linneman* (Mo. App.), 235 S. W. 178, it is stated that knowledge that notes, regular on their face, were given for corporate stock did not place upon the party any duty to inquire of the maker whether he had any defenses, and the fact that the party before buying the notes investigated the maker's credit without going further did not impute bad faith to him. In *Edelen v. First Nat. Bank,* 139 Md. 413, 115 Atl. 599, it was held that knowledge that notes were given for corporate stock did not place upon the transferee any duty to inquire into the transaction by which they were obtained. *Larsen v. Betcher,* 114 Wash. 247, 195 Pac. 27, holds that a jury cannot "be permitted to draw the inference that one purchasing negotiable paper does so in bad faith merely because he knows the paper had its inception in the purchase of corporate stock." And in *First Nat. Bank v. Gunning, supra,* it is said that knowledge that the notes were given for shares of stock of a highly speculative character did not preclude the buyer from being a holder in due course.

Can we infer that knowledge that the note was executed in Idaho was also knowledge that the stock was sold in Idaho by the mining company in violation of statute, or what amounts to the same thing, did the information appearing on the face of the note together with knowledge of the consideration, charge appellant with the duty of inquiry? In *Kraft v. Hoppe,* 152 Minn. 143, 188 N. W. 162, the rule is stated that where the payee is a foreign corporation that had not complied with statutes regulating the right of such corporation to do business in the state, a holder in due course is one who takes the notes without knowledge that the assignor was unlawfully doing business within the state at the time of receiving the instrument in question. From the facts in that case the holder of the notes could have gathered that the notes arose out of a business transaction in the state of Minnesota, but it was not held that such knowledge inferred knowledge also that the payee was unlawfully doing business in Minnesota. From *Farmers & Merchants' State Bank v. Graiff,* 150 Minn. 315, 185 N. W. 374, we infer that knowledge on the part of the person claiming to be a holder in due course that the note is given in the state for corporate stock is not knowledge that the stock is sold in violation of a statute, nor a circumstance charging the party with any duty of further inquiry. And in *McMann v. Walker,* 31 Colo. 261, 72 Pac. 1055, where the grounds of defense were in part similar to the instant case, it is held that such a promissory note is valid in the hands of one taking it before maturity, for value and without notice of the fact that the payee had not complied with the statute. In the two cases last cited, the notes in question were acquired in the state where made by parties domiciled therein, and the rule is applied in such circumstances that mere knowledge that the facts exist which would bring the transaction within the purview of some statute of the state does not infer bad faith without knowledge that such statute had not been complied with. If that is the rule with respect to parties who are all residents of the same

state, it applies with more force to a case like the present one, where the purchaser of the notes is a resident of a state other than the one with the knowledge of whose statutes he is sought to be charged, and there is still less reason in such a case for charging the purchaser with actual notice of illegality.

In *First Nat. Bank v. Pond,* 39 Ida. 770, 230 Pac. 344, this court quoted with approval the rule laid down in *Winter v. Nobs,* 19 Ida. 18, Ann. Cas. 1912C, 302, 112 Pac. 525, that:

"Mere suspicious circumstances are not sufficient to charge the purchaser of a promissory note with bad faith and notice of equities and defenses, but in order to charge the paper in his hands with prior equities and defenses his notice must be actual, either of the facts constituting the equities and defenses or of such circumstances that his action in taking the paper in the face of such knowledge amounts to bad faith. The rights of the holder are to be determined by the simple test of honesty and good faith, and not by speculative issues as to diligence and negligence."

In the instant case there is no proof of actual knowledge by appellant of the facts alleged to constitute the defenses to the note. The circumstances might well charge it with knowledge that the note was given for stock in the mining company. In failing to produce sufficient evidence to support his allegations of fraud, respondent failed to prove the "wildcat" nature of the mining company's operations. We are therefore unable to hold that the appellant is charged with knowledge that the mining company was but a stock selling scheme. From the authorities before cited, neither knowledge that the enterprise was highly speculative, nor knowledge that the payee of the note was in financial difficulties, nor knowledge that the note is given for stock, nor knowledge that such stock was sold in Idaho is sufficient as a matter of law to charge the purchaser with the duty of inquiry into a transaction by which a note, regular on its face, was obtained, unless there are further circumstances

to connect it with a knowledge of the defenses. We are of the opinion that the circumstances stopped short of pointing out to the appellant the infirmities in the instrument. If there was bad faith on the part of appellant it lay in the fact that it did not make inquiry into the transaction. But, as we have seen, the circumstances within its knowledge were insufficient as a matter of law to charge it with the duty of inquiry. The holder is not bound at his peril to be on the alert for circumstances which might possibly excite the suspicions of wary vigilance; he does not owe to the party who puts paper afloat the duty of active inquiry in order to avert the imputation of bad faith. (*Larsen v. Betcher, supra.*)

We conclude that the verdict of the jury lacks any sufficient support in the evidence and that the judgment based thereon should not be permitted to stand. The judgment is accordingly reversed, and the cause remanded to the court below with instructions to enter judgment for appellant for the principal amount of its note, together with interest and attorney fee. Costs of this appeal are awarded to the appellant.

William A. Lee, C. J., and Wm. E. Lee, Givens and Taylor, JJ., concur.