ALLISON HILL TRUST COMPANY, Respondent, *v.* THOMAS
SARANDREA, Appellant.*

Third Department, July 1, 1932.

*Barnell & Fazio* [*R. D. Woolsey* of counsel], for the appellant.

*John L. Robertson,* for the respondent.

VAN KIRK, P. J. Walter S. Schell, Inc., a Pennsylvania corporation, herein called the Schell Company, drew a bill of exchange, which was accepted without condition by the defendant. The bill is dated March 2, 1926, and is payable October 1, 1926. In this bill it is recited that " the obligation of the acceptor hereof arises out of the purchase of goods from the drawer. The drawee may accept this bill payable at any bank, banker or trust company in the United States which he may designate." The acceptor made it payable at the State Bank, Canastota, N. Y. The Schell Company duly indorsed the bill and it was discounted by the plaintiff, which thereby became the holder in due course. (Neg. Inst. Law, § 91.) Payment was demanded, was refused and plaintiff brought this action. The summons is dated January 5, 1927, and was served January 12, 1927.

At the trial the court submitted to the jury one question, namely,

* Affg. 134 Misc. 566.

whether or not the Schell Company was doing business in this State at the time of the transactions set forth in the complaint. The jury's verdict was no cause of action, thus answering this question in the affirmative. The plaintiff regularly moved to set aside the verdict and for such other and further relief as to the court may seem just. An order was made setting aside the verdict and granting a new trial. As did the trial judge, we shall assume, without so determining, that the evidence presented the question of fact submitted to the jury. The remaining question is whether or not this plaintiff, a moneyed corporation, is prohibited from maintaining this action under the statute, section 110 of the Stock Corporation Law. This statute was enacted by the Laws of 1923, chapter 787, and contains the following: " No foreign stock corporation other than a moneyed corporation shall do business in this State without having first procured from the Secretary of State a certificate that it has complied with all the requirements of law to authorize it to do business in this State  *  *  *. No such foreign corporation doing business in this State shall maintain any action in this State upon any contract made by it in this State, unless prior to the making of such contract it shall have procured such certificate. This prohibition shall also apply to any assignee of such foreign corporation and to any person claiming under such assignee or such foreign corporation or under either of them." The statute remained in this form until chapter 425 of the Laws of 1927 was passed, which took effect March 30, 1927. Section 16-g of this chapter 425 was renumbered by chapter 650 of the Laws of 1929 and is now section 218 of the General Corporation Law. The material change from section 110 of the Stock Corporation Law is in the last sentence, where, in place of the word " assignee," the words " any successor in title " are used.

Since the bill of exchange in this case was payable October 1, 1926 and the action begun January 5, 1927, and since the act of 1927 did not take effect until March thirtieth, section 110 of the Stock Corporation Law applies to this case. The trial court held, with an opinion in which the facts and many authorities are carefully set forth, that, whether or not the Schell Company was doing · business in this State within the meaning of the statute in question, that fact is not available as a defense in this action; also that section 96 of the Negotiable Instruments Law prevailed. Section 96 reads as follows: " A holder in due course holds the instrument free from any defect of title of prior parties and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon." It is not disputed that plaintiff in good

faith discounted, at the request of the Schell Company, this bill of exchange before maturity and for value without notice of previous dishonor or of any infirmity in the instrument or defect in the title of the Schell Company, and it was complete and regular upon its face at the time it was negotiated. Plaintiff was, therefore, a holder in due course. (Neg. Inst. Law, § 91.) The plaintiff was not an assignee of the bill of exchange within the ordinary meaning of " assignee." An assignee of a contract or a cause of action takes it subject to any infirmity or defense which existed while in the hands of the assignor (5 C. J. 962, § 150); not so in the hands of a holder in due course. In *Knox* v. *Eden Musee Co.* (148 N. Y. 453) the court said: " The rigid rule of the common law which prohibited the assignment of choses in action was, in England, at an early day, relaxed to some extent to conform to the usages of merchants and the necessities of commerce, and at length, by the aid of statutes and judicial decisions, bills of exchange and promissory notes were completely taken out of its influence, and they came to have distinct attributes and qualities not pertaining to any other form of contract. They were not only made transferable by delivery and suable in the name of the transferee, but, contrary to the general rule of the common law, ' honest acquisition ' for value *was held to give to the transferee a new and original title wholly independent of that of the prior holder and subject to no infirmity which affected the paper in his hands.* * * * These familiar but arbitrary principles applicable to commercial paper, originating in commercial policy, the encouragement of trade, the convenience of having some representative of money readily convertible and commanding confidence, while they operate in many cases with great severity upon the rights of innocent persons, have contributed greatly to stimulate commerce and advance the prosperity of States."

We do not think the word " assignee " was, or the words " any person claiming under * * * such foreign corporation " were, intended to cover a holder in due course. To so hold would much embarrass the business operations not only of people who needed to discount their commercial paper to meet their going needs, but of banks in protecting themselves against losses due to laws of the several States similar to this section of the Stock Corporation Law. It was not intended that a bank, a holder in due course, should be put to the hazard of interpreting the laws of a State. In the several States which have statutes similar to ours there are conflicts in decisions and refinements in reasoning which would confuse and embarrass one who sought information therefrom. (*National Bank of Commerce* v. *Pick*, 13 N. D. 74; *Williams* v. *Cheney*, 3 Gray [Mass.], 215; *Katz* v. *Herrick*, 12 Ida. 1; *First National Bank of Massillon* v. *Coughran*, 52 S. W. [Tenn. Ch.] 1112.) A bank in

another State would encounter real difficulty if it attempted to understand our statutes. Section 96 of the Negotiable Instruments Law has not been repealed or modified; section 110 of the Stock Corporation Law does not declare such instruments to be void. (*Mahar* v. *Harrington Park Villa Sites*, 204 N. Y. 231.) One reading section 96 would be justified in understanding that it stated the law in this State. Sections 110 of the Stock Corporation Law and 218 of the General Corporation Law, *supra*, are not necessarily in conflict. Had the Legislature intended by these sections to declare an exception to the rule in section 96 of the Negotiable Instruments Law it should and would have so stated. "It is all-important to the commercial world that courts do not go in advance of the Legislature in rendering negotiable paper void in the hands of an innocent endorsee." (*Vallett* v. *Parker*, 6 Wend. 615, 622.)

No decision of the courts of this State, thought to be a direct authority, is cited and we have found none, although *Halsey* v. *Jewett Dramatic Co.* (190 N. Y. 231) is so similar that it indicates what would be the view of the court were this identical case before it. In that case section 181 of the Tax Law was considered; it prohibited a foreign corporation from maintaining an action in this State without first paying the license fee imposed. The plaintiff in that case was the assignee of a New Jersey corporation authorized to do business in this State and brought the action to recover a balance upon a contract made with the defendant. The court concluded: "We think that the assignee has no greater rights than the corporation itself and that the defense available against the corporation under the statute would also be good as against the assignee except as to negotiable paper taken in good faith from the corporation before maturity." (See *Manufacturers' Commercial Co.* v. *Blitz*, 131 App. Div. 17, 20; *Lauter* v. *Jarvis-Conklin Mortgage Trust Co.*, 85 Fed. 894, 895.)

We approve the order appealed from, except that we find no ground on which to grant a new trial.

The order setting aside the verdict should be affirmed and judgment directed for plaintiff for the sum of seventy-two dollars, with interest from the 2d day of March, 1926, and costs.

All concur; McNAMEE, J., not voting.

Order so far as it sets aside the verdict affirmed, with costs; and the appellant having stipulated, in case the order setting aside the verdict is affirmed, that final determination might be made by this court, without a new trial, judgment is directed for plaintiff for the sum of seventy-two dollars, with interest from March 2, 1926, with costs.