# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 38050

| | | |
|---|---|---|
| ALESHA KETTERLING, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | Boise, January 2012 Term |
| | ) | |
| v. | ) | 2012 Opinion No. 40 |
| | ) | |
| BURGER KING CORPORATION, dba | ) | Filed: March 2, 2012 |
| BURGER KING, HB BOYS, a Utah based | ) | |
| company, | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| Defendants-Respondents. | ) | |
| _____ | ) | |

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Minidoka County. Honorable Michael R. Crabtree and Honorable Jonathan P. Brody, District Judges.

The judgment of the district court is <u>affirmed</u>.

Kent D. Jensen Law Office, P.C., Burley, for appellant. Kent D. Jensen argued.

Benoit, Alexander, Harwood & High, LLP, Twin Falls, for respondents. Thomas B. High argued.

_____

J. JONES, Justice.

This is an appeal from the district court's grant of summary judgment in favor of Burger King, a Florida corporation, and HB Boys L.C., a Utah limited liability company, in Alesha Ketterling's negligence action. The district court determined that Ketterling had failed to timely serve HB Boys and that Burger King, a franchisor, had no liability for Ketterling's injuries. We affirm.

## I.
## BACKGROUND

Ketterling alleged that she slipped on snow in the parking lot of the Burger King restaurant in Burley, Idaho, on December 22, 2006. BDSB of Western Idaho, L.C., an Idaho limited liability company, has the contractual right to operate the restaurant under a franchise agreement with

Burger King. HB Boys manages the Burley Burger King under a contract with BDSB. According to Ketterling, her fall aggravated an existing knee injury. Ketterling alleged that Burger King's failure to make the premises safe was negligent and entitled her to damages for her injuries. Ketterling originally filed this action on November 5, 2008, naming Burger King as the only defendant. She served Burger King with a summons and copy of her complaint on January 30, 2009. Burger King forwarded the summons and complaint to HB Boys. Then, on May 21, 2009, Ketterling amended her complaint to include HB Boys as a defendant.

HB Boys moved for summary judgment, contending that Ketterling had failed to timely join it as a defendant. The district court agreed and granted the motion. The court subsequently granted summary judgment to Burger King, holding that, as franchisor, it did not control the premises where Ketterling fell and had no vicarious liability for Ketterling's injuries. Ketterling timely appealed. We must consider whether either defendant was entitled to summary judgment. We also review the district court's decision denying Ketterling access to Burger King's franchise agreement for the Burley Burger King restaurant.

## II.
## ANALYSIS

### A. Standard of Review.

When reviewing a district court's grant of summary judgment, "this Court applies the same standard used by the district court." *Miller v. Idaho State Patrol*, 150 Idaho 856, 863, 252 P.3d 1274, 1281 (2011). The district court should grant summary judgment "forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). "The party opposing a motion for summary judgment 'must respond to the summary judgment motion with specific facts showing there is a genuine issue for trial.'" *Brown v. City of Pocatello*, 148 Idaho 802, 806, 229 P.3d 1164, 1168 (2010). If there are no factual issues, only questions of law remain; and this Court exercises free review over questions of law. *Miller*, 150 Idaho at 863, 252 P.3d at 1281.

### B. HB Boys was entitled to summary judgment.

The district court granted HB Boys' summary judgment motion because Ketterling amended her complaint to join HB Boys beyond the two year limitations period. The court observed that Ketterling served the summons and complaint on Burger King on January 30, 2011,

2

more than two years after her alleged fall, and that Burger King subsequently notified HB Boys of the pending litigation. Then, Ketterling amended her complaint to include a claim against HB Boys. The court further noted I.C. § 5-219(4) provides that all claims for personal injury must be filed within two years. Thus, the court found it was undisputed that Ketterling attempted to join HB Boys as a defendant beyond the applicable limitations period and that HB Boys had no notice of the suit before the statute of limitations ran. The court determined that Ketterling could only maintain the action against HB Boys if: (1) her amended complaint "related back" to her original filing, under I.R.C.P. 15(c), such that the addition of HB Boys should be deemed to date to the original complaint; or (2) the statute of limitations was tolled under I.C. § 53-509, which requires businesses to file assumed business names with the Secretary of State. However, the court found relation back did not apply and that no grounds existed for tolling the statute of limitations.

On appeal, Ketterling argues that her amended complaint, which added HB Boys, should relate back because HB Boys would not be prejudiced by untimely service. Ketterling contends that HB Boys had notice of the lawsuit before she filed her complaint, and, in any event, HB Boys learned of the litigation at the same time as Burger King and therefore had ample opportunity to prepare a defense. In the alternative, Ketterling asserts that I.C. § 53-509(1) tolled the statute of limitations, citing *Winn v. Campbell*, 145 Idaho 727, 184 P.3d 852 (2008). According to Ketterling, HB Boys' failure to file an assumed business name with the Secretary of State prevented her from ascertaining HB Boys' identity until she filed her lawsuit against Burger King.

HB Boys counters that regardless of whether it was prejudiced by the lawsuit, Ketterling did not amend her complaint within the two-year period of limitations and therefore was barred from joining HB Boys. HB Boys argues that it did not have actual notice of Ketterling's suit against Burger King until the statute of limitations ran. Further, HB Boys contends that, despite *Winn*, I.C. § 53-509(1) does not toll the statute of limitation here because Ketterling failed to "sue the right party," even though HB Boys' contact information was posted inside the Burley Burger King.

### 1. Ketterling's complaint does not relate back under Rule 15(c).

The district court correctly held that the amendment bringing HB Boys in as a defendant did not relate back to the time the complaint was filed. This Court wrote in *Wait v. Leavell Cattle, Inc.*:

[Rule 15(c)] provides that an amendment changing the party against whom a claim is asserted will relate back to the date of the original pleading if: (a) the claim arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading; (b) within the period provided by law for commencing the action against the new party, he received such notice of the institution of the action that he will not be prejudiced in maintaining a defense on the merits; and (c) within the period provided by law for commencing the action against the new party, he knew or should have known that the action would have been brought against him, but for a mistake concerning the identity of the proper party.

136 Idaho 792, 794–95, 41 P.3d 220, 222–23 (2002). The question presented in the district court was whether the second relation-back element was established. Ketterling argues that the restaurant manager approached her and her husband with some paperwork at the time of the accident. Ketterling stated, in an affidavit, that she exchanged emails with Melinda Moore, a "claims representative" for the Burley Burger King. Ketterling's affidavit included, as an exhibit, a copy of an email from that claims representative, which referenced the "slip and fall that took place at the Burley Burger King." Ketterling also points to an affidavit of HB Boys' human resources director, which states that HB Boys learned of Ketterling's action when Burger King forwarded Ketterling's summons and complaint.

According to the district court, there was no evidence in the record that indicated HB Boys had knowledge of the suit within the two-year period beginning on December 22, 2006. Indeed, the district court noted, "The record does show that HB Boys did not receive actual notification of the lawsuit until after January 30, 2009, which was when Burger King Corporation was served with the original complaint and summons, which it in turn forwarded a copy to HB Boys." On appeal, Ketterling fails to point to any evidence in the record that would cast doubt upon the findings of the district court.

Even if the person described in her briefing as manager of the Burley Burger King had notice of her injury on December 22, 2006, and even if an insurance agent representing that operating entity dealt with Ketterling following the accident, that would not be sufficient to impart "notice of the institution of the action" to HB Boys. Nor was Ketterling's contact with Moore, the claims representative, sufficient to give notice of the lawsuit. The action was instituted on November 5, 2008, and there is nothing in the record to indicate that either Burger King Corporation or HB Boys learned of the institution of the lawsuit until January 30, 2009, well over a month after the "period provided by law for commencing the action" had expired. This case is

4

similar to *Winn* where the Court held, in essence, that notice of an injury within the limitations period is not the same as notice of the filing of the lawsuit within the limitations period. 145 Idaho at 730, 184 P.3d at 855. Rule 15(c) speaks of notice of the institution of the action, rather than learning of the plaintiff's injury and desire to be compensated for the same. Whether HB Boys had notice of *potential* litigation, or whether it would be prejudiced in defending against any action, is not the relevant inquiry. The trial court correctly ruled that Ketterling's amended complaint did not relate back.

### 2. I.C. § 53-509(1) does not toll the statute of limitations.

Ketterling's argument that I.C. § 53-509(1) tolls the statute of limitations is somewhat more appealing, but not enough to overcome her lack of diligence. Idaho's Assumed Business Names Act (the Act), I.C. § 53-501 *et seq.*, requires any entity conducting business under a name other than its actual name to file a certificate of assumed business name with the Secretary of State. I.C. §§ 53-503, -504. "The purpose of [the Act] is to ensure disclosure on the public record of the true names of persons who transact business in Idaho." I.C. § 53-502. This Court has recognized that an earlier Idaho statute governing assumed business names—a predecessor to the Act—existed "to protect the public against fraud and to give public information to persons who deal with those who conduct business under a fictitious name." *Wait*, 136 Idaho at 797, 41 P.3d at 225. Section 53-509 lists the consequences of an entity's failure to comply with the Act. One consequence is that "[a]ny person who transacts business in Idaho under an assumed business name without having complied with the requirements of [the Act] shall not be entitled to maintain any legal action in the courts." I.C. § 53-509(1). The Act defines noncompliance as, among other things, a failure to file a certificate of assumed business name. I.C. § 53-509(3). Tolling an applicable statute of limitations is not expressly listed as a consequence of noncompliance with the Act. *See* I.C. § 53-509. However, in *Winn* we wrote that the discussion in *Wait* about assumed business names implied that noncompliance with the Act might preclude a business from asserting a statute of limitations defense, if the noncompliance misled the plaintiff. *See Winn*, 145 Idaho at 731, 184 P.3d at 856.

But, we held the facts in *Winn* did not support tolling because the plaintiff's failure to timely sue the right party was a result of her own lack of diligence. *Id.* In that case, the plaintiff, Winn, fell at a hotel. *Id.* at 728, 184 P.3d at 853. "She sued Wayne Campbell, dba Home Hotel

5

and Motel, the party she thought operated the hotel, only to discover later that the hotel was operated by a corporation." *Id.* Winn actually fell at a different hotel, the Tumbling Waters Motel, not the Home Hotel. *Id.* When the defendant, Wayne Campbell, moved for summary judgment, Winn moved to amend her complaint to sue Campbell, Inc., which operated both the Tumbling Waters Motel and the Home Hotel. *Id.* at 729, 184 P.3d at 854. The district court held that the statute of limitations barred Winn from amending. *Id.* Winn argued that the statute should be tolled because Campbell, Inc. had failed to register an assumed name for Tumbling Waters Motel and thus failed to comply with the Act. *Id.* at 730–31, 184 P.3d at 855–56. We determined that Campbell, Inc.'s apparent noncompliance with the Act did not disadvantage Winn. Rather, Winn's inability to name Campbell, Inc. within the statutory period was because she did not "take the simple step of finding out where she fell so that she could attempt to sue the correct party." *Id.* at 731, 184 P.3d at 856. We declined to reward Winn's lack of diligence by holding that Campbell, Inc.'s failure to comply with the Act justified tolling the statute of limitations. *Id.*

In this case, HB Boys' failure to file an assumed business name may or may not have disadvantaged Ketterling. HB Boys had failed to file with the Idaho Secretary of State as a foreign limited liability company[1] and therefore was not a "formally organized or registered entity" under I.C. § 53-503(2). Thus, it was required under I.C. § 53-504 to file a certificate of assumed business name. With no information to the contrary on record with the State, a customer of the Burley Burger King might, therefore, assume that it was being operated by Burger King. Indeed, Ketterling contends she was unable to ascertain the name of any entity, besides Burger King Corporation, registered with the Secretary of State to conduct business under the name "Burger King." HB Boys does not dispute this assertion. Ketterling therefore argues that HB Boys should have filed a certificate of assumed business name of "Burger King."

The district court was unmoved by Ketterling's argument because it determined HB Boys' identity was readily available:

---

[1] The Idaho Uniform Limited Liability Company Act (LLC Act), I.C. § 30-6-101 *et seq.*, states that "[a] foreign limited liability company *may* apply for a certificate of authority [from the Secretary of State] to transact business" in Idaho. I.C. § 30-6-802 (emphasis added). The LLC Act provides that foreign limited liability companies that fail to have a certificate of authority may not maintain an action in Idaho courts, but they are not precluded from defending an action. I.C. § 30-6-808. It should be noted, however, that even if HB Boys had filed for a certificate of authority, the certificate would not have disclosed the fact that it was operating the Burley Burger King restaurant. *See* I.C. § 30-6-802.

6

> The identity and contact information for HB Boys was reasonably available and ascertainable prior to the filing of the original complaint by virtue of the undisputed fact that such information was publically posted inside the Burger King restaurant in question, regardless of whether HB Boys was registered with the Idaho Secretary of State.

The district court's reasoning implies that HB Boys' failure to comply with I.C. § 53-504 did not disadvantage Ketterling since the identity of the restaurant operator was readily available for anyone who made inquiry.

Ketterling takes issue with the district court's finding that HB Boys publicly posted its contact information in the Burley Burger King. There does not appear to be any evidentiary basis in the record to support this finding. The finding may have been based upon an affidavit submitted by HB Boys' human resources director stating that "publicly posted within the Burley, Idaho Burger King store is a notice, complete with contact information, of HB Boys, L.C.'s management of that store." However, the affidavit is dated August 21, 2009, and does not indicate exactly what information was posted or whether it was posted before the limitations period ended. An answering affidavit submitted by a legal assistant of Ketterling's counsel stated that she had "examined the every possible public place in the restaurant area and [she] did not see any documents of the type described in [the human resources director's] affidavit." However, that affidavit was based on a visit to the restaurant that took place on October 13, 2009, so it would not be indicative of what may have been publicly posted before the limitations period expired.

Ketterling is correct that this is not a situation in which she "fail[ed] to take the simple step of finding out where she fell." Ketterling had the right place, but she still failed to exercise reasonable diligence in figuring out who to sue. Ketterling's search of the Secretary of State's records was reasonable, but she clearly could have done more. There is no indication in the record that she visited the restaurant prior to the end of the limitations period to find out who was responsible for operation of the establishment. Like the situation in a criminal investigation, where some of the best clues are found at the scene of the crime, often evidence relevant to a personal injury action can be found at the scene of the accident.

While the record does not support the district court's conclusion that HB Boys' identity and contact information was readily available at the restaurant, that information was never-the-less

readily available. It is common knowledge among the public that a state license is necessary in order to operate a restaurant. Idaho Code § 39-1604 states that "[n]o person, firm or corporation shall operate a food establishment . . . without a license approved by the director of the department of health and welfare or his designee." Under the Idaho Food Code, IDAPA 16.02.19, the director has designated Idaho's seven public health districts as the regulatory authority for licensing and regulating food establishments. IDAPA 16.02.19.111.05.b. In the case of Cassia County food establishments, the South Central Public Health District is the regulatory authority. Pursuant to section 8-302.14 of the "Food Code, 2001 Recommendations of the United States Public Health Service Food and Drug Administration," adopted by reference by the Idaho Department of Health & Welfare in IDAPA 16.02.19.004, an applicant for a food license must provide:

(A) The name, birth date, mailing address, telephone number, and signature of the PERSON applying for the PERMIT and the name, mailing address, and location of the FOOD ESTABLISHMENT;

(B) Information specifying whether the FOOD ESTABLISHMENT is owned by an association, corporation, individual, partnership, or other legal entity;

\* \* \*

(D) The name, title, address, and telephone number of the PERSON directly responsible for the FOOD ESTABLISHMENT;

(E) The name, title, address, and telephone number of the PERSON who functions as the immediate supervisor of the PERSON specified under ¶ (D) of this section such as the zone, district, or regional supervisor;

(F) The names, titles, and addresses of:

(1) The PERSON comprising the legal ownership as specified under ¶ (B) of this section including the owners and officers, and

(2) The local resident agent if one is required based on the type of legal ownership.

Upon receipt of a license or permit to operate a food establishment, the permit holder is required to "[p]ost the PERMIT in a location in the FOOD ESTABLISHMENT that is conspicuous to CONSUMERS." *Id.* § 8-304.11(A).

There were two avenues reasonably available to Ketterling to find out who was operating the Burger King. First, Ketterling could have visited the restaurant before the statute of limitations ran and simply asked an employee who was responsible for operating the restaurant. There is no indication in the record that she did so. Second, she could have contacted the health district to learn the identity of the restaurant operator. There is no indication in the record that she did so.

8

Therefore, the district court was correct in concluding that the identity and contact information for HB Boys was reasonably available and ascertainable prior to the filing of the original complaint.

### C.     Burger King was entitled to summary judgment.

It is undisputed that Burger King does not own the premises where Ketterling allegedly fell.  Ketterling argues, however, that Burger King may be held vicariously liable for the torts of its franchisee.  The district court granted Burger King summary judgment, holding that Burger King, as franchisor, did not exercise control over the Burley Burger King premises and that HB Boys did not have apparent authority to bind Burger King.  On appeal, Ketterling contends that Burger King did, in fact, exercise control over the Burley Burger King, as evidenced by a franchise operations manual.  She argues that this franchise operations manual requires franchisees to clear snow and ice from their premises.  She thus asserts that Burger King had sufficient control over the everyday operations of the Burley Burger King that it should be held liable for any negligence of HB Boys.  Burger King responds that Ketterling's contentions are unsupported and that she offers nothing to counter the district court's decision.

We have not previously addressed the question of whether a franchisor may be held liable for the torts of its franchisee.  However, the critical issue is the extent of control the franchisor has in running the franchise.  "A franchisor may be held vicariously liable for the tortious conduct of its franchisee only if the franchisor has control or a right of control over the daily operation of the specific aspect of the franchisee's business that is alleged to have caused the harm."  62B Am. Jur. 2d *Private Franchise Contracts* § 298 (2011).  *See also Miller v. McDonald's Corp.*, 945 P.2d 1107, 1110 (Or. App. 1997) (stating that to be liable a franchisor must have the right to control the method that the franchisee uses in carrying out the franchisee's obligations).  General franchise operating requirements are usually not enough to establish control or a right of control giving rise to liability.  62B Am. Jur. 2d *Private Franchise Contracts* § 298 (2011).

Here, Ketterling relies exclusively on Burger King's franchise operations manual to argue that Burger King had a right of control.  The record before the Court does not include a copy of the operations manual, but the district court determined that the operations manual instructed franchisees to clear snow and ice from the premises as soon as possible. The manual also instructed franchisees to shovel snow from walks, apply ice melt, display caution signage, and

replace ice melt when needed. But the court noted "the manual indicates that the franchisee is 'an independent owner and operator of the restaurant' who is 'responsible for day-to-day operation of his/her business.'" Because Ketterling has cited nothing in the record to contradict the district court's decision, we accept the district court's finding. Burger King cannot be vicariously liable because, according to the district court, the operations manual did not show that Burger King had a right of control over the daily activities of the Burley Burger King. Burger King was entitled to summary judgment.

> **D.** **The district court did not abuse its discretion by denying access to the franchise agreement.**

The district court denied Ketterling's motion to compel production of Burger King's franchise agreement with BDSB, finding that it was not relevant to Ketterling's action. Ketterling argues that the district court's decision was in error because it did not make any finding that the agreement contained privileged information and because Ketterling did not have a chance to evaluate the agreement's relevance. Burger King counters that the district court acted within its discretion.

We will only reverse a trial court's decision to deny a motion to compel if there was a clear abuse of discretion. *Villa Highlands, LLC v. W. Cmty. Ins. Co.*, 148 Idaho 598, 609, 226 P.3d 540, 551 (2010). "This Court uses a three factor test to determine whether the trial court abused its discretion." *Winn*, 145 Idaho at 729, 184 P.3d at 854. We ask: (1) whether the district court perceived the issue as a discretionary one; (2) whether the court acted within the bounds of its discretion and consistent with legal standards and choices available in making such decisions; and (3) whether the court made its decision through an exercise of reason. *Id.*

In this case, the district court did not abuse its discretion. The court recognized that it had discretion to grant or deny the motion and that its discretion was bounded by I.R.C.P. 26(b)(1), which sets forth what information parties may discover. Under Rule 26, a document is discoverable if it is both relevant and not privileged. I.R.C.P. 26(b)(1); *see also Bradbury v. Idaho Judicial Council*, 149 Idaho 107, 115, 233 P.3d 38, 46 (2009) (concluding material that "simply isn't relevant" is not discoverable). The court reviewed the franchise agreement *in camera*, and determined that it did not contain information relevant to Ketterling's action. Specifically, the court found the agreement "contains no terms and provisions that would indicate that Burger King, as the franchisor, has control over, or the right to control, the physical

10

grounds and premises of the specific restaurant at issue in the this case, or the day-to-day operation of the physical grounds and premises." The court thus recognized the decision as discretionary, acted within the bounds of Rule 26, and reached its decision through reason. The court did not abuse its discretion.

**E.      Burger King and HB Boys are not entitled to attorney fees on appeal.**

Burger King and HB Boys request attorney fees on appeal under I.C. § 12-121, arguing that Ketterling's appeal is without foundation. Section 12-121 gives the Court discretion to award fees. I.C. § 12-121. "Normally, this Court will award attorney fees pursuant to I.C. § 12-121 if the appeal merely invites the Court to reweigh the evidence or second guess the lower court, or if the appeal was brought or defended frivolously, unreasonably, or without foundation." *Belstler v. Sheler*, 151 Idaho 819, 827, 264 P.3d 926, 934 (2011).

The slim record before us hindered our ability to evaluate the district court's rulings. However, Ketterling raised valid concerns about the effect of HB Boys' failure to file any documentation with the Secretary of State. As to Burger King, the issues Ketterling presented, though unavailing, were not frivolous or unreasonable. We therefore deny the respondents' fee request.

## III.
## CONCLUSION

We affirm the judgment of the district court. We award costs on appeal to Burger King and HB Boys, but we deny their request for fees.


Chief Justice BURDICK, and Justices EISMANN, W. JONES and HORTON CONCUR.