# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket Nos. 46023, 46024, 46112

| | | |
|---|---|---|
| PHILIP P. MCGIMPSEY, | ) | |
| | ) | |
|    Plaintiff-Counterdefendant-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| D&L VENTURES, INC., a Nevada corporation, | ) | |
| | ) | |
|    Defendant-Counterclaimant-Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DAVID B. ASHER, individually, | ) | |
| | ) | |
|    Defendant-Respondent. | ) | |
| ----------------------------------------------------------- | ) | |
| D&L VENTURES, INC., a Nevada corporation, | ) | |
| | ) | |
|    Third Party Plaintiff-Respondent, | ) | Boise, May 2019 Term |
| v. | ) | |
| | ) | Filed: June 13, 2019 |
| PHILIP P. MCGIMPSEY, as Trustee of JJM Special Needs Trust, | ) | |
| | ) | Karel A. Lehrman, Clerk |
|    Third Party Defendant-Appellant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JOLENE MCGIMPSEY, | ) | |
| | ) | |
|    Third Party Defendant. | ) | |
| ----------------------------------------------------------- | ) | |
| PHILIP P. MCGIMPSEY, | ) | |
| | ) | |
|    Plaintiff-Counterdefendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| D&L VENTURES, INC., a Nevada corporation, | ) | |
| | ) | |

**Defendant-Counterclaimant,** )
)
**and** )
)
**DAVID B. ASHER, individually,** )
)
    **Defendant-Respondent.** )
---------------------------------------------------------- )
**D&L VENTURES, INC., a Nevada corporation,** )
)
)
    **Third Party Plaintiff-Respondent,** )
)
**v.** )
)
**JOLENE MCGIMPSEY,** )
)
    **Third Party Defendant-Appellant,** )
)
**and** )
)
**PHILIP P. MCGIMPSEY, as Trustee of JJM Special Needs Trust,** )
)
)
    **Third Party Defendant.** )
---------------------------------------------------------- )
**PHILIP P. MCGIMPSEY,** )
)
    **Plaintiff-Counterdefendant-Appellant,** )
)
**v.** )
)
**D&L VENTURES, INC., a Nevada corporation,** )
)
)
    **Defendant-Counterclaimant-Respondent,** )
)
**and** )
)
**DAVID B. ASHER, individually,** )
)
    **Defendant.** )
---------------------------------------------------------- )
**D&L VENTURES, INC., a Nevada corporation,** )
)
)
    **Third Party Plaintiff-Respondent,** )
)

| | |
|---|---|
| **v.** | ) |
| | ) |
| **PHILIP P. MCGIMPSEY, as Trustee of** | ) |
| **JJM Special Needs Trust,** | ) |
| | ) |
|    **Third Party Defendant-Appellant,** | ) |
| | ) |
| **and** | ) |
| | ) |
| **JOLENE MCGIMPSEY,** | ) |
| | ) |
|    **Third Party Defendant.** | ) |
| | ). |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Steven Hippler, District Judge.

The district court's order granting summary judgment is <u>affirmed</u>.

Philip P. McGimpsey and Jolene McGimpsey, Eagle, appellants pro se. Philip P. McGimpsey argued.

Jones Williams Fuhrman Gourley, P.A., Boise, for respondents. Kimbell D. Gourley argued.

_____

BRODY, Justice.

This dispute arises from a breach of contract claim between the tenant McGimpsey and landlord D&L Ventures, Inc., who entered into a combined lease/Buy-Sell Agreement for a residential property in Eagle, Idaho. On discovering that D&L was an unregistered Nevada corporation conducting business in Ada County, McGimpsey failed to close on the purchase of the home on September 13, 2017, because he believed D&L to be in violation of Idaho Code section 30-21-502(a) which prohibits an unregistered foreign corporate entity from doing business in the state. After the closing date passed, D&L informed McGimpsey that the contractual provisions terminated upon his failure to close and reminded McGimpsey he had to vacate the property, pursuant to the Buy-Sell Agreement. About a month later, D&L registered with the Idaho Secretary of State as a Nevada corporation and filed all of its tax returns and paid its other obligations. McGimpsey subsequently filed a complaint against D&L, and the corporation counterclaimed against McGimpsey and third-party defendants. D&L filed a motion for summary judgment that was granted in part and denied in part. The district court ultimately

concluded that D&L had the legal ability to convey the property via warranty deed and that McGimpsey breached the Buy-Sell Agreement by failing to close and failing to show that his breach was excused by D&L's alleged inability to convey marketable title. McGimpsey and third-party defendants timely appealed and their appeals have been consolidated in this case. We affirm the district court's award of summary judgment to D&L because Idaho Code section 30-21-502 does not impair the validity of contracts; therefore, D&L had the legal ability to convey the property via warranty deed.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Starting in February of 2014, Philip McGimpsey ("McGimpsey") and his wife Jolene McGimpsey leased a home from D&L Ventures, Inc. D&L is a Nevada corporation owned by David Asher and his wife Georgina Asher. The residential property McGimpsey leased from D&L is located in Eagle, Idaho (hereinafter "the Property"). D&L obtained the Property in a 2013 foreclosure sale and received a trustee's deed, which excluded any warranties.

On June 26, 2017, McGimpsey and the JJM Special Needs Trust—of which McGimpsey is trustee—entered a Buy-Sell Agreement with D&L for the Property. The contract included the following pertinent provisions: (1) McGimpsey would pay $2,400 per month in rent between July 1, 2017 and closing; (2) the parties agreed to a purchase price of $485,000, with $5,000 earnest money at closing; (3) if the parties failed to close, McGimpsey would vacate the Property; (4) the contract was contingent on McGimpsey's receipt and approval of the preliminary title commitment; and (5) at closing, D&L agreed to convey the Property by warranty deed "free of all liens and encumbrances except those described in the preliminary title commitment, as approved by Buyer." D&L also certified that it was "qualified to own or transfer real property in the State of Idaho." Closing was set for September 13, 2017.

While examining the Property's title insurance commitment, McGimspsey discovered that D&L was an unregistered Nevada corporation. Because D&L was conducting business in Ada County as an unregistered entity, McGimspsey believed D&L was in violation of Idaho Code section 30-21-502(a), and, consequently, legally incapable of conveying the Property to McGimpsey "by warranty deed, free of all liens and encumbrances." D&L maintained on multiple occasions that it was ready, willing, and able to deliver the warranty deed at closing. Neither party, however, presented at the closing agent's office on September 13, 2017.

4

In the days following the set closing date, McGimpsey and D&L exchanged emails wherein McGimpsey expressed his desire to still purchase the Property as well as his concern regarding D&L's "capacity" to sell. D&L informed McGimpsey that the contract's buy-sell provisions had terminated, reminded him that his September rent was due, and asked McGimpsey his intentions concerning rent and vacating the Property pursuant to the Buy-Sell Agreement. About two weeks after the designated closing date, McGimpsey demanded that D&L cure its unregistered status. The next day, D&L contacted the escrow officer to return McGimpsey's earnest money in full because closing never occurred. A few weeks later, on October 17, 2017, D&L registered with the Idaho Secretary of State as a Nevada corporation and filed all of its tax returns and paid its other obligations.

On November 3, 2017, McGimpsey filed a complaint against both D&L and Asher for breach of contract, asking the court to find D&L breached the contract and was in violation of Idaho Code section 30-21-502(a). McGimpsey requested either specific performance of the original terms in the Buy-Sell Agreement or monetary damages for the breach. D&L filed a counterclaim against McGimpsey, specifically naming Jolene McGimpsey and the JJM Special Needs Trust as third-party defendants. The court set a date for a jury trial.

On February 26, 2018, D&L filed a motion for summary judgment. D&L maintained that there was "nothing in the law providing that D&L Ventures could not transfer title to the [Property] as a Nevada corporation owning the real estate in Idaho." The court set a hearing for April 10, 2018. A month later, on March 26, McGimpsey filed an opposition brief as well a motion for summary judgment. At the April 10, 2018, hearing for D&L's motion, the district court asked D&L whether it was pursuing damages in the action. D&L stated: "Yes, your Honor, we are comfortable pursuing what I'll call the post-petition rent -- not post-petition, post-closing rent from October through the present date at the $2,400 per month and comfortable not seeking monetary damages if the Court grants summary judgment."

On April 25, 2018, the district court granted D&L's motion for summary judgment in part. The district court noted that "all the pending claims were effectively placed at issue for purposes of D&L's summary judgment motion." It determined that D&L had the legal ability to convey the Property via warranty deed and that McGimpsey breached the Buy-Sell Agreement by failing to close and failing to show that his breach was excused by D&L's alleged inability to

convey marketable title. D&L's remaining claims—breach of implied covenant and a request to quiet title—were moot, so summary judgment was denied on these issues.

McGimpsey then filed a "Supplemental Summary Judgment Supporting Brief" to explain why the district court's order failed to dispose of his complaint, arguing that D&L failed to properly deny allegations thereby creating a question of fact. The district court issued an additional order on May 7 (titled "Order Re: Judgment and Vacating Summary Judgment Hearing") to address McGimpsey's arguments.

The district court issued its original final judgment for D&L on May 7, 2018, and two amended judgments thereafter. Ultimately, the district court concluded that D&L Ventures had the legal ability to convey the real property located in Eagle, Idaho, to McGimpsey and the JJM Special Needs Trust, and that D&L Ventures did not breach the Buy-Sell Agreement by failing to register with the Idaho Secretary of State. The district court also awarded D&L Ventures $21,776.79 against McGimpsey, granted possession of the Property to D&L Ventures, and issued a writ of assistance directing the Ada County Sheriff to remove McGimpsey from the Property. It then dismissed McGimpsey's claims with prejudice. However, McGimpsey did not vacate the Property until June 29, 2018—two months after the entry of judgment—even though their last rent payment to D&L was in September of 2017. After McGimpsey vacated the Property on June 29, D&L retook possession of the Property.

The district court's final judgment was timely appealed.

## II. ISSUES PRESENTED

A. Whether the district court erred in granting summary judgment for D&L and in vacating McGimpsey's summary judgment hearing and the jury trial.

B. Whether the district court erred in dismissing McGimpsey's complaint and thereby deprived McGimpsey of an inviolate right to a jury trial.

C. Whether the district court's order was a valid judgment under Idaho Rules of Civil Procedure 54 and 58.

D. Whether the district court erred in awarding restitution damages to D&L.

E. Whether D&L is entitled to attorney fees and costs on appeal.

## III. STANDARD OF REVIEW

When this Court reviews an order for summary judgment, it applies the same standard of review used by the district court in ruling on the motion. *Van v. Portneuf Med. Ctr.*, 147 Idaho 552, 556, 212 P.3d 982, 986 (2009).

6

This Court must construe the record in the light most favorable to the party opposing the motion, drawing all reasonable inferences in that party's favor. If reasonable people could reach different conclusions or inferences from the evidence, the motion must be denied. However, the nonmoving party must submit more than just conclusory assertions that an issue of material fact exists to withstand summary judgment. A mere scintilla of evidence or only slight doubt as to the facts is not sufficient to create a genuine issue of material fact for the purposes of summary judgment. Instead, the nonmoving party must respond to the summary judgment motion with specific facts showing there is a genuine issue for trial.

*Id.* (citations omitted). However, this Court also reviews questions of law de novo. *Valiant Idaho, LLC v. JV L.L.C.*, 164 Idaho 280, ___, 429 P.3d 168, 174 (2018).

## IV. ANALYSIS

### A. The district court did not err in granting summary judgment for D&L or in vacating McGimpsey's summary judgment hearing and the jury trial.

The district court concluded that D&L had the legal ability to convey the Property via a warranty deed and that McGimpsey breached the Buy-Sell Agreement by failing to close and failing to show that his breach was excused by D&L's alleged inability to convey marketable title. D&L maintains that the district court correctly applied the law and granted summary judgment because there was no genuine issue of material fact. In arguing that the district erred by granting summary judgment for D&L, McGimpsey actually makes four distinct legal arguments: (1) D&L could not legally convey title because of its unregistered status and unpaid corporate income taxes, as required under Idaho Code section 30-21-502; (2) D&L could not provide a warranty deed as required in the Buy-Sell Agreement because D&L "could not convey any better title than what the Trustee held"; (3) pursuant to Idaho Rule of Civil Procedure 8(b)(6), D&L's failure to deny allegations in the complaint were admissions of its material breach of the Buy-Sell Agreement; and (4) even if McGimpsey breached the Buy-Sell Agreement, the district court failed to determine whether McGimpsey's breach was material or incidental. We will address each issue in turn.

#### 1. D&L's unregistered status and likely unpaid corporate income taxes did not impair the validity of the Buy-Sell Agreement.

##### a. D&L's unregistered status

While the district court concluded that McGimpsey failed to justify his failure to close on the Property, McGimpsey contends that a prudent buyer would not proceed to closing knowing

7

of D&L's unregistered status because D&L could not actually convey marketable title under Idaho Code section 30-21-502. We disagree.

Idaho law requires a foreign entity to register with the Secretary of State prior to conducting business in the State of Idaho. Idaho Code section 30-21-502 specifically provides:

(a) A foreign filing entity or foreign limited liability partnership may not do business in this state until it registers with the secretary of state under this chapter.

(b) A foreign filing entity or foreign limited liability partnership doing business in this state may not maintain an action or proceeding in this state unless it is registered to do business in this state.

(c) The failure of a foreign filing entity or foreign limited liability partnership to register to do business in this state does not impair the validity of a contract or act of the foreign filing entity or foreign limited liability partnership or preclude it from defending an action or proceeding in this state.

The statute requires a foreign entity to register with the state in order to conduct business within Idaho; however, an entity's failure to register only affects its capacity to sue. I.C. § 30-21-502(c). The entity's contract formations or its defense in any arising litigation remains unimpaired. *See id.*

This statute—and its predecessors—have been addressed by this Court in a procedural context. For example, in *Burley Newspapers, Inc. v. Mist Publishing Co.*, an unregistered Oregon corporation contracted to sell a newspaper operation it had owned and operated for seventeen years in Idaho. 90 Idaho 515, 517, 414 P.2d 460, 460 (1966). Two years later, the buyer—Burley Newspapers—filed suit to rescind the contract because of alleged misrepresentations and breaches by the seller, Mist Publishing. *Id.* Mist counterclaimed. *Id.* at 517, 414 P.2d at 461. The case came to this Court to determine whether Mist Publishing was barred from filing its counterclaim because it was unqualified to do business in Idaho at the time it entered the contract with Burley Newspapers. *Id.* at 520–21, 414 P.2d at 461–62. This Court concluded the statute did not preclude Mist from asserting its counterclaim because the statute was meant to protect an Idaho citizen's rights to sue, not prohibit or discourage corporations from doing business in the state. *Id.* at 522, 414 P.2d at 462.

In making this determination, the Court assessed the purposes behind the statutes that required foreign corporations to register with the Secretary of State, which are helpful to understanding the newer statutory provisions at issue in this case. The Court quoted the following from *Katz v. Herrick*:

8

A failure to comply with these requirements and obtain the legal right to transact business is not in fact so much of an invasion or violation of the sovereignty of the state as it is a violation of the private and property rights of the citizens with whom it does business. At the time of the adoption of the Constitution, as well as now, it was the practice of many tramp, predatory, and rapacious foreign corporations organized under the laws of-nobody knew where-to come into this jurisdiction, and, without appointing an agent or establishing a place of business, make contracts and transact business, and, after having violated their contracts or committed injuries and depredations upon the rights of the citizen, avoid the process of the state courts, which practically amounted, in many instances, to complete protection and immunity from the consequences of their unlawful acts. In the great majority of instances, if the citizen be unable to prosecute his action and secure redress for his grievances in the state courts and in the county where he resides, it amounts to denying him redress at all. . . . We have never held, and never intended so to do, that such contracts are entirely and absolutely void. On the contrary, we intimated in the original opinion that they are enforceable on the side of the party with whom they have assumed to contract. We did say, however, that the corporation should be without any remedy in the courts on an action to enforce contracts made by them while in default of compliance with the requirements of law. The evil does not exist so much in the contract as in the legal existence of one of the contracting parties. . . . here the hazard and risk is admitted-hazard and risk of being unable to get service of process on the noncomplying corporation.

*Id.* at 521, 414 P.2d at 462 (quoting *Katz v. Herrick*, 12 Idaho 1, 26–30, 86 P. 873, 879–80 (1906)).

While both *Burley Newspapers, Inc.*, and *Katz* addressed older statutory provisions, the historic Idaho Code sections set out similar filing requirements for foreign corporations to register with the Secretary of State in order to conduct business in Idaho. *Id.* at 520–21, 521 n.1–2. Thus, these corporation-registration requirements have long established two important principles: first, contracts made by an unregistered corporation are not void, nor are they voidable by the other party or against public policy; second, the statute's purpose is to ensure Idaho citizens can sue foreign corporations in Idaho. *See id.* at 521–22, 414 P.2d at 462. This conclusion also corresponds with the plain language of the statute, which states: the "failure of a foreign filing entity or foreign limited liability partnership to register to do business in this state does not impair the validity of a contract." I.C. § 30-21-502(c). Indeed, almost every case from this Court dealing with a company's failure to register has concerned permissible litigation procedures, not contract validity. *See, e.g., Ketterling v. Burger King Corp.*, 152 Idaho 555, 558–60, 272 P.3d 527, 530–32 (2012) (holding that an LLC's failure to register as a foreign LLC or

9

file an assumed business name did not disadvantage the plaintiff because the identity and contact information were readily available); *Young Elec. Sign Co. v. Capps*, 94 Idaho 518, 520, 492 P.2d 57, 59 (1971) (quoting *Spokane Merchants' Ass'n v. Olmstead*, 80 Idaho 166, 170, 327 P.2d 385, 387 (1958)) ("The (contract) would not be void though plaintiff had not qualified to do business in this state. The disability affects only the remedy. Qualification at the time of trial is sufficient to entitle plaintiff to maintain the action.").

In contrast, the only authority McGimpsey offers to support his position is the rule that "[e]very title is doubtful which invites or exposes the party holding it to litigation." *Bell v. Stadler*, 31 Idaho 568, 174 P. 129, 131 (1918); *see also Brown v. Yacht Club of Coeur d'Alene, Ltd.*, 111 Idaho 195, 196, 722 P.2d 1062, 1063 (Ct. App. 1986) ("A purchaser of real property who bargained for marketable title thereto cannot be required to accept property with an admitted cloud on the title.") (quoting *Fajen v. Powlus,* 98 Idaho 246, 248, 561 P.2d 388, 390 (1977)). McGimpsey also relies on sections (a) and (b) of Idaho Code section 30-21-502 to remind the Court that the plain language of the statute bars D&L from conducting business in Idaho, including the leasing and selling of the Property. Yet this Court has recognized that a foreign entity's failure to register does not cloud a property's title. *Cooper v. Boise Church of Christ of Boise, Idaho, Inc.*, 96 Idaho 45, 46–47, 524 P.2d 173, 174–75 (1974) (recognizing a quitclaim deed was not void because of a New Mexico corporation's failure to register to do business in Idaho).

Ultimately, no authority supports McGimpsey's interpretation. Instead, the plain language of the statute expressly states that the "failure of a foreign filing entity or foreign limited liability partnership to register to do business in this state *does not impair the validity of a contract*." I.C. § 30-21-502(c) (emphasis added). Case law and the statute's historical purposes also suggest that the longstanding need for, and enforcement of, foreign entity registrations is to protect an Idaho citizen's right to sue the foreign entity. "The evil does not exist so much in the contract as in the legal existence of one of the contracting parties." *Burley Newspapers, Inc.,* 90 Idaho at 521, 414 P.2d at 462 (quoting *Katz*, 12 Idaho at 28, 86 P. at 879). Idaho Code section 30-21-502 is more of a sword than a shield because it protects honest dealers from fraudulent foreign business activities by giving Idaho residents a litigation avenue. As such, D&L's Buy-Sell Agreement would not be void or voidable because of its unregistered status. On the contrary,

D&L's failure to register would not create a defect in the chain of title, making McGimpsey's concerns unfounded.

Finally, while the parties agree that the contract is valid, they disagree over whether McGimpsey's failure to close was excused. He has not supplied any legal basis under Idaho Code section 30-21-502 to justify the breach. The contract is valid and must be enforced in full. "Equity requires that if part of a contract is to be enforced, as respondent is seeking to do in its action, the entire contract, which is valid, also should be enforced, including the obligations of the plaintiff." *Burley Newspapers, Inc.*, 90 Idaho at 522, 414 P.2d at 462. In the end, D&L's nonregistration did not invalidate its contractual ability to sell the Property and McGimpsey failed to show any authority to the contrary that would excuse his non-performance.

### b. D&L's unpaid taxes

McGimpsey next contends that D&L incurred potential tax liabilities as an unregistered entity, thereby creating a cloud on the Property's title that prohibited D&L from providing a warranty deed. The district court concluded that unpaid taxes cannot become a lien on a property until the taxes are assessed and, even then, "the lien or potential lien would only extend to the property currently owned by the tax payer at the time of the assessment." The district court's analysis is correct.

Pursuant to Idaho Code section 63-3050, tax debts to the State of Idaho may be collected through a lien foreclosure. Likewise, under the federal Internal Revenue Code, unpaid federal taxes can become a lien "in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. However, both federal and state laws specify that a lien arises at the time of a tax assessment. 26 U.S.C. § 6322; I.C. § 63-3045A(1). Idaho law provides: "no tax commission activities to enforce collection of tax may be conducted, nor may a proceeding to collect a tax be instituted, until taxes are assessed in accordance with the provisions of this section." I.C. § 63-3045A(1). Federal law states: "the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time." 26 U.S.C. § 6322. Thus a tax lien arises after assessment begins, and unassessed corporate taxes are not an encumbrance on the corporate property. *See* 26 U.S.C. § 6322; I.C. § 63-3045A(1).

There is no evidence of a tax assessment, lien, or tax lien proceedings on the Property or on D&L prior to the closing date. McGimpsey indicates that discovery would solve these factual gaps by providing evidence of any unpaid taxes, yet simultaneously argues that he acted as a prudent purchaser when he refused to close even though there is no evidence to support his assertions. Absent such evidence, McGimpsey failed to establish a reasonable basis for him to refuse to close on the purchase of the Property.

**2. D&L could promise a warranty deed as required in the Buy-Sell Agreement despite receiving a trustee deed.**

McGimpsey contends that because D&L received a trustee deed on obtaining the Property in 2013, it "could not convey any better title than what the Trustee held." He also asserts that the warranty deed does not exist because it was never produced. We reject McGimpsey's arguments.

A deed is, quite simply, a writing—signed, sealed, and delivered—to convey some interest in property. *Glander v. Glander*, 72 Idaho 195, 200, 239 P.2d 254, 257 (1951). In Idaho, a "conveyance of an estate in real property may be made by an instrument in writing, subscribed by the party disposing of the same, or by his agent thereunto authorized by writing." I.C. § 55-601. One such instrument is a warranty deed, which "expressly guarantees the grantor's good, clear title and that contains covenants concerning the quality of title, including warranties of seisin, quiet enjoyment, right to convey, freedom from encumbrances, and defense of title against all claims." *Warranty deed*, BLACK'S LAW DICTIONARY (8th Ed. 2004).

However, the common law requirements for a deed have never required the writing to be identical through the chain of title. In other words, D&L was not required to convey the Property without warranties because it received the Property without warranties. As analyzed in the foregoing sections, D&L could convey the Property despite its unregistered status, and it could have been held liable to McGimpsey if there was a breach of warranty. Once again, McGimpsey points to no authority for his argument and his contention that, if accepted, would turn property law on its head by trapping real properties in set warranties (or lack thereof) in perpetuity.

**3. D&L generally denied allegations in the complaint so it did not admit a material breach of the Buy-Sell Agreement.**

Following the district court's order granting D&L summary judgment, McGimpsey argued that D&L's failure to properly respond to and deny allegations in the complaint were admissions of the corporation's material breach of the Buy-Sell Agreement. The district court

concluded that D&L generally denied the allegations therein, which made "IRCP 8(b)(6) . . . of no assistance to McGimpsey in fending off judgment." We agree with the district court's analysis.

Idaho Rule of Civil Procedure 8(b)(6) states, "An allegation, other than one relating to the amount of damages, is admitted if a responsive pleading is required and the allegation is not denied. If a responsive pleading is not required, an allegation is considered denied or avoided." However, Rule 8(b)(3) permits a party to generally deny all allegations except those specifically admitted. While it is technically true that D&L did not respond specifically to paragraphs 16 through 18 of McGimpsey's complaint, paragraph 1 of D&L's answer and counterclaim stated, "Defendants deny each and every allegation not specifically admitted herein." This is an appropriate general denial of the remaining allegations. The lack of specific responses to these paragraphs alone does not constitute an admission of material breach by D&L.

### 4. The district court correctly concluded that McGimpsey's non-performance was a material breach even if it did not use that exact language.

Finally, McGimpsey claims that the district court "failed to decide whether [his] breach was material or merely incidental" to the Buy-Sell Agreement. We disagree.

A material breach is one that permits the other party to rescind the contract. *Borah v. McCandless*, 147 Idaho 73, 79, 205 P.3d 1209, 1215 (2009). Such a breach is more than incidental—a material breach "touches the fundamental purpose of the contract, defeating the object of the parties entering into the agreement." *Id.*

In inferring his breach was only incidental, McGimpsey seems to only rephrase his argument that his performance should be excused because D&L breached by not providing marketable title. In addition, the district court implied there was a material breach, even if it did not use that terminology, because it concluded that the breach occurred when McGimpsey failed to close on the purchase of the Property. That was a material breach because it defeated the fundamental purpose of the Buy-Sell Agreement—the purchase of the Property. The district court's finding that McGimpsey breached the Buy-Sell Agreement did not constitute clear error.

### B. The district court did not err in dismissing McGimpsey's complaint, nor did it deprive McGimpsey of an inviolate right to a jury trial.

Citing to Idaho Rules of Civil Procedure 38 and 39, McGimpsey next argues that the district court violated McGimpsey's constitutional right to a jury trial by granting summary judgment for D&L before McGimpsey's summary judgment hearing occurred. He also alleges

this "judicial wheeling and dealing" of the summary judgment process denied him an opportunity to be heard. D&L argues that McGimpsey's claims were fully briefed in support of his motion for summary judgment, and that all the claims were resolved by the district court through summary judgment. We agree that the district court resolved all claims and that McGimpsey received due process.

Idaho Rules of Civil Procedure 38 and 39 preserve a party's constitutional right to a jury trial and establish the procedures required to request and waive a jury trial. *See generally* I.R.C.P. 38–39. Meanwhile motions for summary judgment fall under Idaho Rule of Civil Procedure 56, and summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). "To survive summary judgment, a non-moving party must demonstrate the existence of a genuine issue for trial." *Kootenai Cnty. v. Harriman-Sayler*, 154 Idaho 13, 17, 293 P.3d 637, 641 (2012). The burden shifts to the non-moving party to show the existence of a genuine issue of material fact. *Id.* The adverse party must set forth specific facts—a "mere scintilla of evidence," slight doubt, or conclusory assertions are insufficient to raise a genuine issue of material fact precluding summary judgment. *Id.*

The record clearly shows that McGimpsey requested a jury trial and the district court set a date for that trial. However, both parties filed motions for summary judgment soon thereafter. With cross motions for summary judgment before the court, the district court correctly determined that all of the claims from McGimpsey's complaint were before the court: the questions of contract breach, potential violations to Idaho Code section 30-21-502(a), and a determination of remedies.

As noted by the district court, in opposing D&L's motion for summary judgment McGimpsey simply referred to his own motion and memorandum for summary judgment, "thus compelling the Court to consider both in rendering a decision."

> In opposition and response to Defendants' February 26, 2018 global summary judgment motion, Plaintiff fully incorporates by this reference his independent Motion for Summary Judgment and Supporting Brief dated and served on March 23, 2018.

Both D&L and McGimpsey argued before the district court at the hearing on D&L's motion for summary judgment on April 10, 2018. Thus all issues were before the district court on cross motions for summary judgment, and the district court heard both parties make oral arguments on

14

their briefing at the April 10 hearing. As shown in the analysis under section A, the district court correctly determined that D&L could convey the Property despite its unregistered status and McGimpsey failed to show why his breach for failing to close should be excused. The district court addressed all of McGimpsey's claims in his complaint; there were no remaining issues for a jury trial to address.

As for McGimpsey's due process argument, procedural due process requires both notice and the opportunity to be heard, but "the protections and safeguards necessary vary according to the situation." *Meyers v. Hansen*, 148 Idaho 283, 292, 221 P.3d 81, 90 (2009). McGimpsey's opportunity to be heard was given and utilized at the April 10 hearing, but his assertions were still found wanting after he pleaded his case. A second bite at the apple in another summary judgment hearing is not required for due process, nor has McGimpsey presented any new factual or legal basis that would establish a genuine issue of material fact to preclude summary judgment.

## C. The district court issued a valid judgment under Idaho Rules of Civil Procedure 54 and 58.

Following the district court's award of summary judgment to D&L, McGimpsey filed a supplemental brief to argue that D&L actually admitted to a material breach under Idaho Rule of Civil Procedure 8(b)(6). In response, the district court issued its May 7, 2018, "Order Re: Judgment and Vacating Summary Judgment Hearing" alongside its final judgment. That May 7 order explained that the district court properly denied all of McGimpsey's claims and that every issue was ultimately addressed by the earlier April 25 award of summary judgment to D&L. McGimpsey now asserts that the district court's May 7 order was not a valid judgment under Idaho Rule of Civil Procedure 54(a)(1).

McGimpsey's contention is unfounded. The May 7 order was never intended as a final judgment. The district court issued the order upon receipt of McGimpsey's additional briefing, filed outside the proper procedures and following adjudication on the parties' motions. It was simply a response to McGimpsey's unauthorized brief. In addition, the actual judgment entered on May 7 is appropriately titled, states the relief D&L is entitled to (including dismissal of McGimpsey's claims with prejudice), has no recital of the pleadings, and begins with "JUDGMENT IS ENTERED AS FOLLOWS:" as required by Idaho Rule of Civil Procedure 54(a)(1).

**D. The district court did not err in awarding restitution damages to D&L.**

McGimpsey's final argument on appeal is that judicial estoppel bars the award of restitution damages and that D&L waived its right to damages because it said at the April 10 hearing it would not seek damages. As the district court noted, this is a disingenuous reading of the April 10 hearing transcript.

Judicial estoppel is a doctrine that "precludes a party from advantageously taking one position, then subsequently seeking a second position that is incompatible with the first." *McCallister v. Dixon*, 154 Idaho 891, 894, 303 P.3d 578, 581 (2013). In addition, "clear error will not be deemed to exist if the findings are supported by substantial and competent, though conflicting, evidence." *State, Dep't of Health & Welfare v. Roe*, 139 Idaho 18, 21, 72 P.3d 858, 861 (2003).

In the April 10 hearing, the district court asked what remedies D&L sought. D&L explained that it was not seeking damages for lost profit on the sale of the property but that it sought "post-closing rent from October through the present date at the $2,400 per month" rate. McGimpsey's report of the transcript is misconstrued. D&L consistently maintained throughout litigation that it sought unpaid rent from McGimpsey, the tenant who refused to vacate the Property or pay rent and late fees for the additional nine months he lived there. McGimpsey has not given any basis to apply judicial estoppel, nor has he given any explanation of why D&L is not entitled to the unpaid rent. In short, McGimpsey's judicial estoppel argument is unsupportable and the award of damages to D&L did not constitute clear error.

**E. D&L is not entitled to attorney fees and costs on appeal.**

D&L claims it is entitled to attorney fees on appeal pursuant to Idaho Code section 12-121. That provision states: "In any civil action, the judge may award reasonable attorney's fees to the prevailing party or parties when the judge finds that the case was brought, pursued or defended frivolously, unreasonably or without foundation." However, McGimpsey presented some legitimate issues on appeal concerning the interpretation of the corporate registration statute. We do not find his appeal frivolous and accordingly decline to award D&L fees on appeal.

## V. CONCLUSION

We affirm the district court's final judgment for D&L, but decline to award attorney fees. Costs to D&L.

Chief Justice BURDICK, and Justices BEVAN, STEGNER, and MOELLER CONCUR.